### REISSNER *v.* HURLE.

CONSTITUTIONAL LAW.—*Publication of Sheriff's Sale in German Newspaper.*— The act of March 9th, 1875, " providing for publication of official matter in German newspapers," Acts 1875, p. 75, so far as it applies to notices of sales of real estate on execution, is an act regulating the practice in courts of justice, and is local and special, and therefore is in conflict with sections 22 and 23 of article 4 of the constitution of the State.

AMENDMENT OF LAWS.—*Section 467 of the Code.—Sheriff's Sales.*—Section 467 of the civil code was amended and entirely superseded by the act of February 2d, 1855, 2 G. & H. 249. Therefore, the act of March 11th, 1875, Acts 1875, p. 115, purporting to be amendatory of said section 467, is wholly inoperative.

From the Marion Superior Court.

*N. B. Taylor, F. Rand,* and *E. Taylor,* for appellant.

*J. E. McDonald* and *J. M. Butler,* for appellee.

DOWNEY, J.—This was a motion or complaint by the appellant, as sheriff of Marion county, against the appellee, to recover the amount of the purchase-money for certain real estate sold by the sheriff to appellee.

It is alleged that on the 6th day of May, 1875, the Singer Manufacturing Company recovered a judgment against Andrew Schearer; that on the 11th day of May, 1875, an execution was issued on the judgment to the said sheriff; that the sheriff on the 26th day of August, 1875, levied upon, advertised, and on the 18th day of September, 1875, sold to the appellee certain real estate of the execution defendant in Marion county,

Reissner *v.* Hurle.

and tendered him a certificate of purchase therefor, and that the defendant refused to pay the purchase-money.

The defendant answered, admitting that he made the purchase, but setting up as a reason why he did not pay the purchase-money, that Marion county contains more than fifteen thousand inhabitants, and that the sheriff had not advertised the notice of the sale of the real estate in a German newspaper, one or more of which were published in the county.

The appellant demurred to this answer, and the demurrer was overruled, and there was judgment for the defendant.

Upon appeal to the general term of the superior court, this judgment was affirmed, and from that judgment an appeal was taken to this court, where the ruling of the court in general term is assigned as error.

The law in force prior to March 9th, 1875, 2 G. & H. 249, sec. 467, as it was amended in 1855, provides, that " the time and place of making sale of real estate, on execution, shall be publicly advertised by the sheriff, for at least twenty days successively, next before the day of sale, by posting up written or printed notices thereof, in three public places in the township in which the real estate is situated, and a like advertisement at the door of the court-house of the county; and also by advertising the same, for three weeks successively, in a newspaper printed nearest to the real estate, if any such newspaper be printed within the jurisdiction of the sheriff; provided, that if the publisher of such newspaper shall neglect or refuse to publish such notice when requested so to do by the sheriff, it shall be lawful for the sheriff to publish the same in any other newspaper published within his jurisdiction; or if there be no other such newspaper published in the county, the sheriff may dispense with the publication of such notice in a newspaper, and the land may be sold without such publication; and the sheriff shall, in his return of such writ, state the refusal of the publisher of such newspaper to publish the notice; which return shall have the same effect in evidence as the official returns of sheriffs in other cases."

On the 9th day of March, 1875, the following act was

passed and approved, and went into force in consequence of a declared emergency :

" That in any county containing fifteen thousand or more inhabitants, and wherein a newspaper in the German language is published, all public notices of sales of real estate for delinquent taxes, or by virtue of any execution, order or decree of any court of record, in such county, and all other public notices of official matter by the county authority, now by law required to be published in any newspaper, shall, in addition to the publication heretofore required, be published in one of the German newspapers having general circulation in such county, and said notice, shall be published in such German paper in the same manner, and for the same time, such notices now are required to be made and published."

Then follows the section declaring an emergency for the immediate taking effect of the act. Acts Reg. Ses. 1875, p. 75.

On the 11th day of March, 1875, an act was passed and approved, entitled as follows :

"An act to amend the four hundred and sixty-seventh section of an act entitled 'An act to revise, simplify and abridge the rules, practice, pleadings and forms, in civil cases, in the courts of this State, to abolish distinct forms of actions at law, and to provide for the administration of justice in a uniform mode of pleading and practice, without distinction between law and equity.' "

The body of the act is as follows :

" That section 467 of an act entitled 'An act to revise, simplify,' " etc., reciting the title as above, "be amended to read as follows : Sec. 467. The time and place of making sale of real estate, on execution, shall be publicly advertised by the sheriff for at least twenty days successively next before the day of sale, by posting up written or printed notices thereof in three public places in the township in which the real estate is situated, and a like advertisement at the door of the courthouse of the county, and, also, by advertising the same for three weeks successively in a newspaper of general circulation printed within the jurisdiction of said sheriff; provided, that

if the sheriff shall be unable to procure the publication of said notice in some newspaper of general circulation printed within his county, it shall be lawful for him to dispense with the publication of said notice, and the land may be sold without such publication, and the sheriff shall, in his return of such writ, state his inability to procure such publication, and such return shall have the same effect in evidence as the official returns of sheriffs in other cases."

It is urged by counsel for the appellant, that the act of March 9th, 1875, above set forth, is invalid, and three reasons or grounds are stated and relied upon :

1. That the title of the act is not sufficient under section 19 of article 4 of the constitution of the State; that the law requiring notice of sheriffs' sales is a part of the code of practice, and the act should have been in form an act to amend the section in the code on that subject.

2. That the act is in conflict with sections 22 and 23 of article 4 of the constitution of the State ; that all laws regulating the practice in courts of justice must be uniform ; that this act is in relation to practice in courts of justice, and prescribes a different rule in the courts in different counties of the State, and is such a law as section 22 of the constitution was intended to prohibit.

3. That the act approved March 11th, 1875, above set out, repeals by implication the act of March 9th, 1875—the act in question—it having been passed two days later ; that the last act undertakes to prescribe the manner in which sheriffs' sales shall be advertised, is complete in itself, and is in conflict with the former act, as that requires a different mode of advertising from the last act.

We pass over the first objection to the act, and proceed to consider the second and third.

So much of section 22 of article 4 of the constitution of the State as is material to the question in hand is as follows:

" The General Assembly shall not pass local or special laws in any of the following enumerated cases ; that is to say : * * * Regulating the practice in courts of justice."

And so much of section 23 of the same article as relates to the question before us is as follows:

"In all the cases enumerated in the preceding section, * * * all laws shall be general, and of uniform operation throughout the State."

We are of the opinion that the law in question is a law relating to practice in the courts, within the meaning of the twenty-second section. The issuing of executions, the requisites thereof, the levy, appraisement of the property levied upon, the advertisement of the property for sale, the manner of selling, the return of the writ, etc., are all regulated by the code of practice in civil cases. 2 G. & H. 220, *et seq.* The subject of executions, and the proceedings thereon by the sheriff, are embraced in the approved works on practice. In Tomlins Law Dict., under the title of "Practice of the Courts," he gives this general definition:

"By this is understood the form and manner of conducting and carrying on suits or prosecutions at law or in equity, civil or criminal, through their various stages, from the commencement of the process to final judgment and execution; according to the principles of law and the rules laid down by the several courts."

After speaking of the various steps in the cause, the author says:

"When execution is over, the cause is over; but a cause may, on many occasions, come much sooner to an end, and in a direction very different from what has been mentioned; it may come sooner to a trial, or it may come to execution without a trial."

It is clear, we think, that the law in question is local and special. It is just as much a local law as if the counties to which it applies had been designated by their names.

Assuming that two-thirds of the counties in the State have each a population of fifteen thousand or over, then the law would be in force in two-thirds of the counties of the State and not in force in the other third, and in the counties having less than fifteen thousand population, no matter how many of

its inhabitants read the German language, or how many papers in that language may be published in the county, the sheriff would have no legal authority for advertising in the German newspapers. It is not possible that this law can now have any operation in many of the counties of the State for lack of the requisite population, and in some of them such will, in all probability, always be the case.

Another objectionable feature of the law is this: It applies a different rule of practice to executions in the hands of the same sheriff. If the sheriff of Marion county, for example, has an execution in his hands issued on a judgment rendered in Marion county, and another execution in his hands issued on a judgment rendered in some other county of the State, on the first he must advertise the sale of lands in a German paper, while on the second he must not. The language of the law is, " by virtue of any execution, order or decree of any court of record in such county." In this the law is not general and of uniform operation. Had the law provided for publication of such notices in all cases where there was a newspaper printed, etc., in the German language, a different question would have been presented.

Having disposed of the second objection, so far as we deem the law in conflict with the constitution, we may remark upon the law generally, that it does not seem to be based on the utility or importance of giving notice of such sales to persons reading the German language. As we have already said, it takes no account of the number of such persons in a county. If there is ever so small a number of persons in a county having a population of fifteen thousand, who read that language, still, if there is a German paper published there, the sheriff must advertise in that paper. On the other hand, if a large majority of the population in any county, having less than fifteen thousand population, read the German, and if they have a German paper, the sheriff cannot legally advertise in such paper.

Certainty in legal proceedings, and especially where title to lands is involved, is exceedingly desirable and important. How

Reissner *v*. Hurle.

is it to be ascertained, under this law, when the question arises whether a county at a given date has fifteen thousand population or not? The law does not provide how this is to be done. By the last census, one county in the State had precisely fifteen thousand population. How is it to be shown what its population is now, or at any other date? Several other counties, in point of number, fall near the dividing line. The law does not adopt the last or any other census as a basis. We think the law invalid on account of its repugnancy to the twenty-second and twenty-third sections of article 4 of the constitution of the State.

The third objection to the validity of the law is based upon the supposition that it was repealed by the later act of March 11th, 1875. This presents a question which has already been decided in several cases. Under these rulings, the last named act is inoperative. It will be observed that the act of March 11th professes to amend the four hundred and sixty-seventh section of the civil code; but that section was amended and entirely superseded by the act of 1855. Acts 1855, p. 57. The section as amended is also found in 2 G. & H. 249. Thus the act of March 11th, 1875, undertook to amend a section of the civil code which had no existence, and, according to the cases cited, was wholly inoperative. *Draper* v. *Falley*, 33 Ind. 465; *Board of Commissioners, etc.*, v. *Markle*, 46 Ind. 96; *Blakemore* v. *Dolan*, ante, p. 194.

The judgment is reversed, with costs, and the cause remanded for further proceedings.