## ROBERTS ET UX. *v.* SHROYER.

JUDICIAL SALE.—*Conveyance to Assignee in Bankruptcy.*—The adjudication that a debtor is a bankrupt is the foundation of all subsequent proceedings therein, including the conveyance of the bankrupt's property, by the judge or register, to the assignee, whether the proceedings be voluntary or involuntary.

SAME.—*Inchoate Interest of Wife in Bankrupt's Land.*—Such conveyance is a "judicial sale," within the meaning of section 1 of the act of March 11th, 1875, 1 R. S. 1876, p. 554, making absolute the wife's inchoate interest in lands of her husband, sold at a judicial sale.

SAME.—*Partition.*—The inchoate interest of the wife in lands of a husband adjudged a bankrupt after the taking effect of such act becomes absolute, and she is entitled to partition, immediately upon the conveyance of the bankrupt's estate to the assignee.

From the Greene Circuit Court.

*W. M. Franklin, T. S. Rollins* and *G. W. Stubbs,* for appellants.

*A. G. Cavins, E. H. C. Cavins, J. T. Dye* and *A. C. Harris,* for appellee.

WORDEN, J.—This cause was submitted to the court below, on an agreed statement of facts, in substance as follows:

Roberts *et ux. v.* Shroyer.

Catherine Roberts is, and for a long time has been, the wife of said Charles H. Roberts. Charles H. Roberts, at the time of the commencement of certain proceedings in bankruptcy hereinafter mentioned, was the owner of certain land described, situate in Greene county, Indiana. In May, 1878, said Charles H. Roberts filed his petition, in the District Court of the United States for the District of Indiana, sitting at Evansville, for the benefit of the bankrupt law of the United States; and such proceedings were thereupon had in said court that he was adjudged and declared a bankrupt. An assignee was duly appointed, and Shroyer is a purchaser of the land, from the assignee, under the proceedings in bankruptcy.

Catherine Roberts, under these facts, claims to be entitled to one-third of the land, and to have the same set off to her, but the court below, being of a different opinion, decided against her. Hence this appeal.

The question presented is one of considerable importance, and has been ably and exhaustively argued by counsel, but it lies within a narrow compass. It depends upon the construction and effect of our statute on the subject, and a few provisions of the bankrupt act.

The 1st section of our statute of March 11th, 1875, Acts 1875, Reg. Sess., p. 178, is all of that act that need be noticed as bearing upon the question It provides:

" That in all cases of judicial sales of real property, in which any married woman has an inchoate interest by virtue of her marriage, where the inchoate interest is not directed by the judgment to be sold or barred by virtue of such sale, such interest shall become absolute and vest in the wife in the same manner and to the same extent as such inchoate interest of married woman now become absolute upon the death of the husband, whenever, by virtue of said sale, the legal title of the husband in and to such real property shall become absolute and vested in the pur-

chaser thereof, his heirs or assigns, subject to the provisions of this act and not otherwise. That when such inchoate right shall become vested, under the provisions. of this act, such wife shall have the right to the immediate possession thereof, and may have partition, upon agreement with the purchaser, his heirs or assigns, or upon demand, without the payment of rent, have the same set off to her."

It will be seen by the section of the statute above quoted, that the wife's right does not become absolute and vested, upon the sale, unless the sale be a judicial one; and it is insisted by the appellee that a sale under proceedings in bankruptcy is not a judicial sale. This leads to the inquiry whether such sales are of a judicial character; and this question involves a secondary one, as to when such sales must be regarded as having taken place. A reference to a few of the provisions of the bankrupt act will be necessary for a solution of these questions.

Section 5,014 (we refer to the sections of the law as found in Rev. Stat. U. S. 1878) provides for filing petitions in cases of voluntary applications for the benefit of the law, and enacts that ".the filing of such petition shall be an act of bankruptcy, and such petitioner shall be adjudged a bankrupt." Section 5,028 provides for adjudging the debtor to be a bankrupt in cases of involuntary bankruptcy.

The bankrupt law provided for the appointment of registers and the choosing of assignees, and section 5,044 provided that, "As soon as an assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto, and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and

by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee," etc.

It is thus seen that the foundation of all subsequent proceedings in bankruptcy, including the conveyance by the judge or register to the assignee, is the previous adjudication of the debtor's bankruptcy. That adjudication gives character to the conveyance made by the judge or register to the assignee, and makes it a judicial sale. It is judicial because it is founded on the judgment of the court. That the conveyance thus made by the judge or register must be regarded as a sale, is a point that will be considered further on in this opinion. That the adjudication is the foundation of all subsequent proceedings in bankruptcy, admits of no doubt, whether the proceedings be voluntary or involuntary. Thus, in *Wright* v. *Johnson*, 8 Blatchf. C. C. 150, it was held that a conveyance by the register to the assignee, without any adjudication of bankruptcy, in a case of voluntary application, passed no title to the assignee. WOODRUFF, J., in pronouncing the opinion, said : "I am of opinion, that the adjudication that the petitioners are bankrupt, is an essential prerequisite and precedent condition of the power of the register to make any such assignment. True, the filing of the petition is an act of bankruptcy, but the adjudication is the judicial ascertainment and declaration of the fact, that the petitioners are legally bankrupt, upon which all the subsequent proceedings are founded. It is the act by which the court takes hold of the subject-matter, applies to it its jurisdiction, and gives legal effect to what the statute declares to be an act of bankruptcy."

That the conveyance by the judge or register to the assignee, if it can be regarded as a sale, is a judicial sale within the spirit and meaning of our law, we have no doubt. That the conveyance thus made by the judge or register must be regarded as a sale within the meaning of our

statute, we think is equally clear. The statute, as will be seen, uses the terms " sale " and " purchaser." These are correlative terms. A purchaser of real estate is not necessarily one who pays a consideration for it. Indeed, there are but two modes of acquiring title to real estate ; one is by descent and the other by purchase. Whenever it is acquired otherwise than by descent, it is acquired by purchase. " Purchase," says BLACKSTONE, " indeed, in its vulgar and confined acceptation, is applied only to such acquisitions of land, as are obtained by way of bargain and sale for money, or some other valuable consideration. But this falls far short of the legal idea of purchase : for, if I give land freely to another, he is in the eye of the law a purchaser, and falls within Littleton's definition, for he comes to the estate by his own agreement ; that is, he consents to the gift." 2 Bl. Com. 240.

We quote also the following paragraph, on the same subject, from 3 Washburn on Real Property, p. 401 : " In one thing all writers agree, and that is in considering that there are two modes only, regarded as classes, of acquiring a title to land ; namely, descent and purchase ; purchase including every mode of acquisition known to the law, except that by which an heir, on the death of an ancestor, becomes substituted in his place as owner by the act of the law."

The fact that the assignee takes no beneficial interest in the land, but holds it in trust, or as an officer of the court, for the benefit of the creditors of the bankrupt, does not make his acceptance of the title any the less a purchase, in the eye of the law.

But it is urged that the title which vests in the assignee, by the conveyance to him by the judge or register, is not absolute within the meaning of our statute, and, therefore, that such sale is not within the terms of the statute. The bankrupt act provides that the conveyance to the as-

signee shall vest the title in him.    It is not provided that
the title shall vest conditionally ; and, if not conditionally,
it must vest absolutely.    We suppose that the author of
our statute may have had in his mind, when he adopted
the phraseology employed, the provisions of our other
statute, allowing a year for redemption in cases of sales
upon execution, and intended to exclude any inference
that in such cases the act would apply until the year had
expired and the purchaser had received his deed, whereby
his title would become absolute.    But, however this may
be, we are clear that the conveyance to the assignee vests
the title in him absolutely, by virtue of the terms of the
bankrupt act.

It may be possible that, in some rare instances, circum-
stances may occur during the progress of the settlement
of the bankrupt's estate, which would render it equitable
that the title should be revested in him ; but this by no
means proves that the title of the assignee is not absolute.

The view which we have taken of the question best ac-
cords with what we regard as the object, spirit and pur-
pose of the law.    There is no more reason that a wife's
inchoate right should vest and become absolute where
the title passes out of the husband, for the benefit of
creditors, under the operation of the State law, than there
is that such result should follow where the title passes out
of the husband for the benefit of creditors, under the oper-
ation of the bankrupt law.    And it is peculiarly proper that
her inchoate right should be deemed to become vested
and perfect when the conveyance is made to the assignee,
because the title of the husband vests in the assignee, and
the latter becomes at once entitled to the possession.    The
wife should not be required to await a sale by the assignee,
and in the mean time be entitled to neither the possession
of her portion nor the rents and profits thereof.    Besides
this, if the wife's right does not become vested and perfect

when the conveyance is made to the assignee, it would seem that the act in question could not apply to sales made under the bankrupt law at all. The act only applies to sales by which the husband's title is divested. The husband's title is not divested by a sale made by the assignee, but by the conveyance made to the assignee.

, For these reasons, we are of opinion, that, under our statute, a wife's hitherto inchoate right became vested and perfect when the conveyance was made to the assignee in bankruptcy, and that she then became entitled to have partition of the land.

What we have said applies to cases where the proceedings in bankruptcy were commenced after the taking effect of the statute in question. We express no opinion on the subject in respect to cases where the proceedings were commenced before that time.

The judgment below is reversed, and the cause is remanded, for further proceedings in accordance with this opinion.