No. 8437.

## LAWSON ET AL. *v.* DEBOLT.

VOLUNTARY ASSIGNMENTS.—*Sale of Debtor's Real Estate, a Judicial Sale.—Vested Right of Debtor's Wife to Possession and Partition.*—The sale of a debtor's real estate, under the act of March 5th, 1859, providing for voluntary assignments, 1 R. S. 1876, p. 142, is a judicial sale within the meaning of the act of March 11th, 1875, 1 R. S. 1876, p. 554, vesting the inchoate interests of married women in the lands of their husbands, when their title has been divested, and entitles the wife to immediate possession and partition.

SAME.—*Jurisdiction.—Sale of Real Estate in Another County.*—The circuit court of the county in which the debtor resides, and makes his assignment of his property, has jurisdiction to order and confirm the sale and conveyance of his real estate in another county.

SAME.—*Acts of February 1st and 26th, 1875.—Amendment.*—The act of February 26th, 1875, 1 R. S. 1876, p. 145, undertaking to amend section 10 of the act of March 5th, 1859, after its effectual amendment by the act of February 1st, 1875, 1 R. S. 1876, p. 144, is unconstitutional and void.

SAME.—*Private Sale on Credit.—Deferred Payments.*—Section 10, 1 R. S. 1876, p. 144, as amended, fully authorizes an order by the court for the sale of the debtor's real estate at private sale, on a credit not exceeding two years from the date of such sale.

SAME.—*Collateral Attack.*—The orders of a circuit court having jurisdiction of an insolvent debtor's assignment, even though erroneous, are not open to collateral attack.

From the Madison Circuit Court.

*J. W. Sansberry* and *M. A. Chipman,* for appellants.
*H. D. Thompson,* for appellee.

ELLIOTT, C. J.—Malinda DeBolt, the plaintiff below and

here the appellee, was the wife of William DeBolt on and long prior to the 25th day of December, 1876. On that day her husband made a voluntary assignment for the benefit of creditors, but she did not join in the deed of assignment. At the time the assignment was made, the appellee's husband was the owner of certain real estate situated in the county of Madison, but was then a resident of Randolph county. The assignee applied for an order to sell the real estate in Madison county, and received from the Randolph Circuit Court an order directing him to make the sale prayed for. Sale was made by the assignee pursuant to the order of the court, and the appellant Alfred Lawson purchased the land and a deed was duly executed to him by the assignee. The sale was reported to the court by the assignee, and was duly confirmed. The appellee demanded partition; appellant refused to comply with her demand and asserted title to the entire land.

The sale made by the assignee and confirmed by the court was a judicial sale. The matter of the trust created by the assignment was within the jurisdiction and control of the court; the petition to sell brought the specific matter up for judicial action; the order of sale was the result of this action, and the judgment confirming the sale adopted as that of the court the sale and conveyance of the assignee. In *Williamson* v. *Berry,* 8 How. 495, 547, the Supreme Court of the United States held that a judicial sale is "one made under the process of a court having competent authority to order it, by an officer legally appointed and commissioned to sell." Some of the cases do hold that a sale can be considered a judicial one only where made *pendente lite,* and that a sale by a sheriff is therefore not a judicial sale, and this may perhaps be considered the general technical rule. We do not believe that the Legislature in enacting that a wife might assert her right to her interest in the lands of her husband, intended that the words "judicial sale," as used in the act of 1875, should have a meaning so narrow and technical. If such a meaning were assigned to the words the purpose of the statute would be defeated. The statute, if

so interpreted, would be of very little practical effect. There would not be one case in a thousand where it would apply. The intention of the Legislature plainly was to give the wife an immediate, present right in all cases where the title of the husband is divested by sales made pursuant to judicial orders, decrees or judgments. The mere words of a statute must always give way to the intention of the Legislature, when that is manifest and certain. It is very evident that the Legislature never meant that the wife's rights should be made to depend upon fine-spun distinctions, or close technical definitions.

The decisions heretofore made clearly annex a much broader signification to the words "judicial sale" than that which, in an exact technical sense, they possess. *Roberts* v. *Shroyer*, 68 Ind. 64; *Ketchum* v. *Schicketanz*, 73 Ind. 137; *McCracken* v. *Kuhn*, 73 Ind. 149. In *Jackman* v. *Nowling*, 69 Ind. 188, it was expressly adjudged that a sheriff's sale is a judicial sale within the meaning of our statute. The point was so ruled in *Taylor* v. *Stockwell*, 66 Ind. 505. But if we were driven to assign to the words "judicial sale" the most rigid and narrow technical meaning, there would be no difficulty in this particular case, for the assignee acted under the order of a court, "the matter was depending," there was a report and an order of confirmation. To such a strait, however, neither the rules of law nor the demands of public policy force us; on the contrary, they unite in requiring of us a broad and liberal construction of the language used by the Legislature.

It is contended that the Randolph Circuit Court had no authority to make the order of sale. On this point we have no difficulty. The trust created by the assignment was within the jurisdiction of that court. The trustee and the trust property were subject to its control and bound by its judgments. The whole trust, with all its appendages, was within the jurisdiction of the court of the county where the assignor resided and the assignment was executed. Its orders reached and operated upon the trustee, and it alone possessed the authority to make orders, giving or withholding power to sell. The trus-

tee was not bound to apply to any other court. He had no right to make reports or receive instructions from any other tribunal.

The order of sale is declared by counsel to be a nullity because the court has no power to order lands sold at private sale. If it were granted that the court misconceived its power, the order would not be void, for such a misconception would be a mere error. Even if it were such an error as might be made available upon a direct attack, it would not avail one where assault is made by indirection. Error in the course of legal proceedings is one thing, and lack of jurisdiction quite another and different thing. It can not be doubted that the court had complete jurisdiction. If it had jurisdiction, its orders, even though erroneous, were not mere nullities.

There is some confusion in the statutes. Two acts amending section 10 of the voluntary assignment act were passed at the session of 1875, one on the 1st day of February and the other on the 26th day of the same month. The first act is the effective one, for the last is an attempt to amend a section which had already been superseded by amendment. The act of February 1st, 1875, contained an emergency clause, and was in force when the second act was adopted. Under the settled rule, the act of February 26th, 1875, is of no validity. *Brocaw* v. *The Board, etc.,* 73 Ind. 543; *Blakemore* v. *Dolan,* 50 Ind. 194; *Reissner* v. *Hurle,* 50 Ind. 424; *Board, etc.,* v. *Markle,* 46 Ind. 96; *Draper* v. *Falley,* 33 Ind. 465.

The act of February 1st, 1875, authorizes the assignee to sell at public sale and to sell on credit, but provides that the time of payment shall not exceed twelve months, and this was the provision of the original act. The amendatory act contains this provision: *"And provided further,* That the judge of said court may, for good cause shown, order the sale of any real estate so assigned, to be sold on credit, and shall divide the payments into instalments, to fall due at such time as the court may order." 1 R. S. 1876, p. 145. This statutory provision furnishes an irrefutable answer to appellants'

argument, for it fully empowers the court to order either a public or a private sale upon such terms as to payment as may be deemed expedient and proper. Without the order of the court the credit can not exceed twelve months, but the court may, upon cause shown, give longer time.

It may well be doubted whether the appellant is in a situation to aver that the proceedings upon which his own title depends are void. He is certainly endeavoring to lop off the branch upon which he is himself sitting, and success would give him as hard a fall as anybody else. But we are not required to decide anything upon this point, and we pass it.

There can be no doubt that where, as in the present case, the sale is made by order of the court, and is duly reported and confirmed, it is a judicial sale within the meaning of our statute. We think all sales of real estate made by assignees acting under the provisions of the statute concerning voluntary assignments, must be regarded as judicial sales. The assignment of the debtor creates a trust. This trust at once comes within the jurisdiction and control of the court. The assignee administers it under the direction of the court. All that is done by the assignee is done under the sanction of judicial authority. Reports must be made to the court. The trustee must account to, and obey the order of, the court possessing jurisdiction of the trust. 1 R. S. 1876, p. 145. The power of the court begins with the creation of the trust and continues until, by order or decree, the trust is finally closed. From first to last the judicial authority extends over the trustee and the trust property. A sale made by a trustee acting under the supervision and subject to the control of the judiciary has many of the essential features of a judicial sale, enough, certainly, to bring it within the spirit of our statute.

The act of 1875 intends, that in all cases where the property of the husband goes to satisfy the demands of his creditors, and goes by virtue of any legal process, order, writ, judgment or decree of court, or through any judicial intervention, the wife shall have an immediate right, and not be postponed

until the death of her husband.   The character of the means which takes the property from the husband, and applies it in satisfaction of the demands of the creditors, is not the material or controlling consideration.   The important thing is the end reached, not the means by which it is attained.   The Legislature did not intend that the wife's rights should depend upon the procedure by which the property was taken from her husband and appropriated to the payment of his indebtedness. It makes no difference so far as the wife's rights are concerned, whether the property is seized upon execution, assigned in bankruptcy or conveyed to a trustee under insolvents' acts; for whatever be the method which takes it from the husband, the reason for giving the wife her interest is the same.   The Legislature, we are confident, never intended that the means adopted to give the creditors the property should control and determine the wife's rights. It matters little or nothing to the wife how the property is taken from the husband, whether by sale under an assignment, or whether by sale under execution, in either case the important matter with her is the enjoyment of the property while its enjoyment will be of material benefit. It was to effect this object that the act of 1875 was enacted, and the legislative intent ought not to be defeated by making the question turn upon the means used to get the property from the husband and appropriate it to the benefit of his creditors.

Another consideration is entitled to weight.   If we hold that the wife can not secure the benefit of the act of 1875 in cases where her husband makes a voluntary assignment, then the usefulness of the act concerning such assignments will be greatly impaired, for men will suffer their property to be sold upon execution, and thus save the rights of their wives, rather than assign it and thus destroy such rights.

Judgment affirmed.