## MARSHALL *v.* WHITNEY *et al.*

### (*Circuit Court, D. Indiana.* July 30, 1890.)

**1. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE.**

Where a debtor buys land which he causes to be conveyed to his wife in alleged satisfaction of a debt due from him to her, but with the intention of putting his property beyond reach of his creditors, and she agrees at the time to mortgage the land for his benefit, the transaction is fraudulent as to his creditors.

**2. HUSBAND AND WIFE—DOWER—FRAUDULENT CONVEYANCES.**

Rev. St. Ind. 1881, § 2508, which provides that in all cases of judicial sales of land in which any married woman has an inchoate interest by virtue of her marriage, such inchoate interest shall, unless the judgment otherwise direct, immediately become vested as if her husband were dead, does not apply to land to which the husband never had title, and which has been sold on execution against him only because it was bought with his money and conveyed to his wife to defraud his creditors.

In Equity. Bill to quiet title.

*McDonald, Butler & Snow* and *T. W. Harper,* for complainant

*Rhoades & Williams,* for defendant.

WOODS, J. Whitney and Currier recovered in this court a judgment in attachment against James A. Marshall, on the ground that he had fraudulently disposed of his property with intent to hinder and delay his creditors. Mrs. Marshall prosecutes this suit to quiet her title in certain real estate, upon which the attachment was levied, against the the judgment rendered, on the ground that she was a good-faith purchaser for value of the property, which she asserts was purchased by her husband, and upon his procurement conveyed to her in payment and discharge of a debt which he owed her. The master, speaking to this point, concedes the right of a husband to pay an indebtedness to his wife in preference to other creditors, but says: "While the law allows this, it requires, in fairness to other creditors of the husband, that transactions between husband and wife, when she claims a preference, should be viewed with suspicion, and that her claim as a creditor * * * should be made perfectly clear;" and to this statement of the rule of evidence exception is taken, counsel insisting that in respect to the transactions of husband and wife, as in respect to the dealings of others, the presumptions are in favor of honesty and fairness. Whether the proposition of the master is precisely accurate I do not find it necessary to decide. In his support, see Wait, Fraud. Conv. §§ 300, 301, and cases cited. In this case it is shown, and not seriously or directly denied, that the intention of the debtor in disposing of his prop-

erty, and in taking the title to that in question in the name of the plaintiff, was to put his leviable goods beyond the reach of creditors; and, this being so, it was certainly proper that any claim asserted by or in behalf of the wife, in hostility to the creditors whom the husband was seeking to defraud, should have been received by the master with a degree of caution and hesitation amounting to suspicion.    In respect to the question whether the plaintiff was a creditor of her husband to the extent asserted, the master has reported against her, and that, when she accepted the conveyance made to her, "she was cognizant of the fraud which the court adjudged her husband guilty of in procuring this conveyance to be made to her;" and the circumstances in evidence tending to the support of this conclusion are such as to forbid interference by the court to set it aside.    If in fact there was as much due her as claimed, it was remarkable and extraordinary.    The extraordinary sometimes happens, but in this instance the proof of it was not such as to make belief compulsory.

But if it were conceded that the debt was as large as stated, there is one fact in proof, testified to by both Mr. and Mrs. Marshall, which shows that the property was conveyed to her, not in final and effective discharge of the liability, but only in colorable payment,—to the extent at least of one-half of the indebtedness.    In answer to the question whether she "had any intention at the time of hindering, cheating, or defrauding any creditors of Mr. Marshall in taking this conveyance," she said:  "No, sir; there wasn't anything of the kind ever thought of, or ever mentioned, because I agreed with him that, if he would deed me this property, that in case he could not get through with his indebtedness I would allow him him to take a mortgage upon this vacant lot [a part of the property in question] of $1,000; and Mr. Balue had already negotiated a loan on this lot, and knew where he could get this money; and, of course, if it had not been attached, in a few days a loan would have been made on this lot.    Of course there was a mortgage on the other [part of the] property, and there could not be anything done with it, and I was willing to do that in order to get through."    And when asked on cross-examination if she did not know that she could not make a loan on her property to apply on her husband's debts, she answered:  "I could make the loan, and turn the money over to him to pay his debts.    That was the agreement."    The testimony of Mr. Marshall is to the same effect, and they both represent that the $1,000 which it was proposed to raise he intended in a certain contingency to pay to Whitney and Currier; but whether he would have done that or not would have been a matter of mere choice on his part.    The essential feature of the transaction to be considered here is that the plaintiff's right to hold this property against the creditors of her husband depends on the truth of the assertion that she received it in payment of what was due her; but, instead of that being the fact, a mere shuffle was made, by which, to the extent of $1,000, at least, she took title, not for her own benefit, but for the benefit of her husband, to do with it as he should please; and that his purpose was fraudulent, if not conceded, is not to be denied.

Another question remains. The statutes of Indiana allow a debtor who is a resident householder an exemption of property from sale upon execution or attachment to the amount of $600 in value, and to the wife of one whose real estate, whether his title be legal or equitable, is sold at judicial sale, the interest which had before been only inchoate becomes absolute and vested, (Revision 1881, §§ 704–715, 2491, 2508;) and on the strength of these provisions, as construed and interpreted by the supreme court of the state, it is contended that, if the property in suit should be declared subject to sale on the attachment as the property of her husband, she will be entitled, in any view of the facts or law, to one-third of the property in her own right as wife, and out of the proceeds of the sale to the sum of $600, exempted to the debtor, and that, the remainder of the property being fully covered by incumbrances which were upon it when purchased by her husband, and subject to which the conveyance to her was made, there remains nothing of value which creditors can reach, and consequently, as was decided in *Brigham* v. *Hubbard,* 115 Ind. 474, 17 N. E. Rep. 920, there is no ground for equitable interference in behalf of creditors. If this were conceded, it would not follow that the plaintiff should have the active aid of a court of equity to confirm a title obtained as hers was. The proposition, however, is not conceded. Mr. Marshall is not now a resident householder, but dwells in another state, and connot claim an exemption; and, if the question is referable to the date of the conveyance, (which seems to me not allowable under the circumstances,) it does not appear that he did not then have money or other valuables, not subject to seizure on execution, exceeding the exemption allowed by law.

Whether or not the plaintiff can claim one-third of this property, as wife of the debtor, if it shall be sold upon the attachment against him, under section 2508 of the Revision, is a more important and perhaps more difficult question. The language of the provision, so far as important here, is:

"That in all cases of judicial sales of real property, in which any married woman has an inchoate interest by virtue of her marriage, where the inchoate interest is not directed by the judgment to be sold, or barred by virtue of such sale, such interest shall become absolute and vested in the wife in the same manner and to the same extent as such inchoate interest of a married woman now becomes absolute upon the death of her husband, whenever by virtue of said sale the legal title of the husband in and to such property shall become absolute and vested in the purchaser thereof."

The inchoate right as declared and granted by another statute, (section 2491,) is given in lands in which the husband has only equitable interests, as well as those of which he has held the legal title, and in the conveyance of which the wife has not joined. The supreme court, as the cases cited below will show, has put upon these statutes a broad and liberal construction, treating as within their spirit cases which are plainly enough not within their letter. *Ketchum* v. *Schicketanz,* 73 Ind. 137; *Lawson* v. *De Bolt,* 78 Ind. 563; *Leary* v. *Shaffer,* 79 Ind. 567; *Hudson* v. *Evans,* 81 Ind. 596; *Keck* v. *Noble,* 86 Ind. 1; *Straughan* v. *White,* 88

Ind. 242; *Mattill* v. *Baas*, 89 Ind. 220; *Shelton* v. *Shelton*, 94 Ind. 113; *Mansur* v. *Hinkson*, Id. 395; *Rupe* v. *Hadley*, 113 Ind. 416, 16 N. E. Rep. 391; *Citizens' Bank* v. *Bolen*, 121 Ind. 301, 23 N. E. Rep. 146. Some of these cases go to the extent of holding that where a conveyance of the husband in which the wife has joined is set aside as fraudulent, and the land sold on execution against the husband, the wife takes an interest, and in some of them it is so held in respect to lands in which the husband had only an equitable, and not the legal, title; but in no case like the one in hand has it been held that the wife can, upon sale of the property, assert a right under this statute against a creditor who by attachment or execution or by means of a creditors' bill seizes upon and subjects to sale in satisfaction of the husband's liability property of which he never had title, and in which the wife never had an inchoate right, and which is subject to such sale only because it was purchased with his means, and the title conveyed to another for the purpose of defrauding his creditors.   There are expressions in some of the cases to the effect that, if a creditor elects to treat a conveyance as void, he cannot say it is valid for any purpose; and if he elects to have property sold as the property of his debtor, he cannot dispute the legal consequences of the fact; and in legal parlance it is quite common to speak of setting aside fraudulent conveyances, and to treat the remedy granted to creditors as given upon the theory that the conveyance was never made, or that the title wrongfully transferred had been reinvested in the debtor; and in cases where he had once held the title, this theory will ordinarily subserve the ends of justice, but, if applied to this case, and others readily conceivable, it will lead to consequences too plainly wrong to admit of approval by a court of conscience.   A better and more effective theory of relief is well recognized in the books and opinions of the courts. That theory recognizes the validity of such conveyances as between the immediate parties; and the creditor, by seeking his remedy against the property, instead of estopping himself to deny, is compelled to concede, that fact, and to take his relief accordingly.   In *Stout* v. *Stout*, 77 Ind. 537, a case in which there had been mesne conveyances between the fraudulent grantor and the defendant holder of the title, it is said:

"The theory of the action is not to annul the deeds and revest the title in the original grantor, but to convert the fraudulent grantee into a trustee holding for the benefit of the injured creditors.   Except as to creditors, the conveyance is valid, and it will not be interfered with further than necessary to secure their rights."

To the same effect, see *Lippincott* v. *Carriage Co.*, 34 Fed. Rep. 570. To hold the wife, in a case like this, entitled to take an interest as against attaching creditors, would be to make of the law itself an invitation to fraud.   The embarrassed and dishonest debtor would need only to exchange all his possessions for real estate incumbered already for two-thirds or three-fourths of its value, take the title in the name of his wife, and bid defiance to his creditors.   Perhaps it will be said he can, without question, do the same thing by taking the incumbered title in his own name, and, when the creditor levies upon and sells the property,

have the wife assert her right, and leave the creditor nothing of value beyond the incumbrances. I am not ready to concede that the courts are powerless to give relief in such a case, upon proof that the investment was made in that way for the purpose of defrauding creditors. The case in hand, however, is not like the one supposed, in which, the title having been in the husband, the wife's assertion of right would have support in the letter of the law, if not in its spirit, while in this case the claim is entirely outside the letter of the statute, and has no support in its spirit or in considerations of justice and fair dealing. Exceptions overruled.