Filed Feb. 31, 1895.

---

No. 16,876.

CHASE ET AL. *v.* VAN METER.

JUDICIAL SALE.—*Assignment by Husband for Benefit of Creditors.—Wife's Interest in Land Sold.*—If a married man make an assignment of his real estate for the benefit of his creditors, his wife not joining therein, under the voluntary assignment law, and the land thus assigned is sold by his assignee, such assignee's deed will operate to

pass the title to only two-thirds of such real estate, and the remaining third will vest in the wife of such assignor.

ASSIGNMENT FOR BENEFIT OF CREDITORS.—*Sale of Real Estate.—Title, When Passes.*—Title to real estate sold by an assignee under our voluntary assignment law does not pass until the sale is approved and confirmed by the court.

JUDGMENT.—*Lien, Extent of.—Outstanding Equities.*—A judgment is a lien only on the title of the judgment defendant, and is subject to all outstanding equities.

REAL ESTATE.—*Merger of Claims in Equitable Title.—Merger in Legal Title.*—A person may have several claims upon a tract of land and they will all exist without merger, because it may take them all to make a complete equitable title, but when he is invested with the legal title, if there be no reason for keeping them alive, they are deemed merged in the greater title.

SAME.—*Merger, Mortgagor Acquiring Title Less Than Mortgage Title.*— If a person have a mortgage lien upon an entire tract of land and acquires a title to such land less extensive and comprehensive than such mortgage title, there can be no merger.

SAME.—*Merger.—Legal and Equitable Estate Not Commensurate.*—A legal estate will not absorb an equitable one unless the two estates are coextensive or commensurate.

SAME.—*Merger.—Intent.—Presumption.*—Merger will not take place if. it be contrary to the intention of the party in interest. If such intention has not been expressed, it will be sought for and ascertained in all the circumstances of the transaction. If it appear from them to be for the benefit of the person acquiring both interests that merger should not take place, and the equitable or lesser estate be kept alive, then his intention that such a result should follow will be presumed, and equity will carry it into execution by preventing a merger. If, from all the circumstances, a merger would be disadvantageous to him, then his intention that it should not result will be presumed.

From the Fountain Circuit Court.

*C. M. McCabe*, for appellants.

*J. A. Lindley, V. E. Livengood* and *A. Marshall*, for appellee.

DAILEY, J.—This was a suit by the appellee as holder of a specific lien upon certain real estate in virtue of a certificate of purchase obtained at an execution sale made under a judgment owned by the appellee against the ap-

Chase *et al. v.* Van Meter.

pellant as holder of a certificate of purchase obtained under a senior decree of foreclosure against the same real estate, to have said decree declared formally paid and satisfied, and to enjoin the sheriff, the defendant Simmerman, from executing a sheriff's deed thereon.

There are four assignments of error, but the meritorious and only question to be determined by this court is that presented by the third assignment, which is: "The court erred in the conclusion of law stated upon the finding of facts."

The first and second specifications challenge the sufficiency of the complaint, but the questions made thereby are waived by the appellant. The cause is presented to this court solely upon the special findings of fact returned by the court and its conclusions of law stated thereon. The facts found by the trial court and presented here, undisputed, show that on the 29th day of August, 1884, Henry C. Wilkins and Catharine E. Wilkins, his wife, executed a mortgage to one Robert J. Jones on the real estate described in the complaint, for $500, and that it was duly assigned and transferred to the appellant on the 24th day of November, 1885; that said Wilkins and wife also executed a mortgage on said tract to Levi Woody on the 31st of May, 1882, to indemnify him against loss by reason of his being surety on two promissory notes executed by said Wilkins for $1,200 to James Bodine; that the payee, on May 6, 1885, transferred and assigned said notes to Charles M. McCabe, who thereafter recovered judgment thereon against said Woody for $1,417.19 in an action in the Fountain Circuit Court, at the September term, 1885; that said Woody, after the judgment was rendered, and during said term of court, assigned and transferred said indemnity mortgage to said McCabe, who thereafter assigned the same, together with said judgment, to appellant, Chase; that Henry C. Wil-

kins was the owner in fee of the real estate described in the complaint on the 15th day of April, 1882, and continued to be such owner until the 2d day of March, 1885, subject to the mortgages heretofore mentioned, and that said Catharine was his wife during all of said period, and was such at the time of the assignee's sale and the recovery of the judgment and decree of foreclosure hereinafter mentioned; that on March 2d, 1885, before appellant became the owner of said mortgages, Henry C. Wilkins, pursuant to chapter 18 of the Revised Statutes of 1881, duly executed a deed of assignment of all his property, real and personal, including the real estate described in the complaint, to John F. Redenbaugh, for the benefit of all the creditors of said Wilkins, and that his wife did not join therein; that on the 2d day of April, 1885, after said Redenbaugh had accepted and qualified to discharge the duties of said trust, he, as such assignee, petitioned the Fountain Circuit Court, alleging the existence of said mortgage liens, and obtained an order to sell said real estate at private sale for not less than the full appraised value, and apply the proceeds in payment and satisfaction of said liens; that the appraised value of said real estate was $3,000; that after ten months of unsuccessful effort to sell the same under said order, the assignee proceeded, without further order of the court, under the general authority conferred upon assignees under the assignment laws of the State, to advertise and offer said tract for sale at public auction to the highest bidder for one-third of purchase-money cash, and the balance in two equal payments in three and six months respectively, deferred payments to be secured by notes with approved surety, 8 per cent. interest from date, without relief from valuation laws.

No mention was made in the advertisement of sale that the real estate would be sold free from incumbrances, or

that the purchase-money would be applied to the payment and discharge of the mortgage liens thereon. At the sale so advertised, said Ella V. Chase bid the sum of $100, and being the only bidder, and having complied with her said bid according to the terms of the sale, as advertised, said assignee issued to her a certificate of purchase of said real estate, which she thereafter assigned to Charles M. McCabe, who received the assignee's deed thereon; that said mortgage debt, at the time of such sale, was wholly unpaid and unsatisfied; that no part of the money derived from said sale was ever applied to the payment of any part of said debt or decree, nor to the payment of any other incumbrance upon said real estate, but was exhausted in the payment of legitimate expenses connected with the management of said trust; that said mortgage debt and decree of foreclosure remained wholly unpaid and unsatisfied at the time of the sheriff's sale under the decree of foreclosure, unless the purchase of the real estate at the assignee's sale aforesaid, by the assignee of the mortgages, operated as a merger and satisfaction of the mortgages so far as they affected the real estate in question; that said real estate was sold by said assignee to said Chase, on the 15th day of May, 1886, three days before the rendition of the judgment and decree of foreclosure aforesaid; that said certificate of purchase was assigned to said McCabe on the 18th day of May, 1886, the day on which said judgment and decree were rendered; that on said day the assignee reported said sale to the court, and showed that the purchaser was desirous of paying the purchase-money in cash and taking a deed for said real estate, and further showing that the certificate of purchase had been assigned to said McCabe, and asking that said sale be approved and confirmed; that he be authorized to receive said purchase-money and execute a deed of conveyance for said real es-

tate to said McCabe, which deed was executed and approved by the court; that on the 17th day of November, 1887, said McCabe, by quitclaim deed, for the consideration of $2,500, conveyed said real estate to Ella A. Myers, and took from her a mortgage thereon to secure the unpaid part of the purchase-money; that afterwards, on the 23d day of May, 1889, said Myers deeded said real estate back to said McCabe; that on the 31st day of January, 1890, the said McCabe, for the consideration as expressed, of $1,600, conveyed a part of said real estate to John C. Myers, Sr., husband of Ella A. Myers; that on the 13th day of May, 1889, the plaintiff, in an action by him in the Fountain Circuit Court, against Ella A. Myers, recovered a judgment against defendant for $1,- 650; that afterwards plaintiff commenced an action in said court against said Ella and John Myers to set aside said conveyance on the ground that it was made to cheat, hinder and delay the creditors of said Ella, and to subject said real estate to the payment of plaintiff's said judgment; that in said action the plaintiff, on the 12th day of February, 1891, recovered a judgment and decree setting aside said conveyance and declaring it void, and ordering and decreeing said realty subject to execution for the payment of said judgment and costs; that on the 24th day of February, 1891, said Chase caused a certified copy of said judgment and decree of foreclosure to be issued to the sheriff of said county, who thereupon and by virtue of said writ advertised said real estate to be sold on the 21st day of March, 1891, and in pursuance thereof did, on said day, sell the same to said Chase, and executed to her a certificate of purchase therefor; that on the 12th day of February, 1891, the plaintiff caused an execution to be issued from the Fountain Circuit Court upon his said judgment, which was duly levied upon said real estate on the 9th day of April, 1891, and

said real estate was advertised for sale and sold on the 2d day of May, 1891, for $1,100 to the plaintiff, who received a certificate of purchase therefor, which he now holds and owns. The court finds that said McCabe advanced to said Chase, the money that was used by her in buying the real estate at the assignee's sale; that she assigned the certificate of purchase to said McCabe to secure the payment of the sum so advanced, with the agreement that it was to secure him in the amount of money advanced, and to keep the mortgage liens alive, and to prevent a merger, and said certificate was finally, by consent of said Chase, used by said McCabe, and accepted by him in satisfaction of the claim for money advanced as aforesaid; that the other part of said real estate was conveyed by quitclaim deed to Ella A. Myers by said McCabe on the 31st day of January, 1890, for the consideration expressed in the deed of $400. Upon the foregoing facts the court stated the following conclusions of law:

1st. That the fee-simple title to an undivided one-third of the real estate described in the complaint, is in Catharine E. Wilkins, wife of Henry C. Wilkins, and that as to this undivided one-third, the plaintiff has no interest therein.

2d. That the sale of said real estate at public auction had the effect to vest the equitable title to an undivided two-thirds of said real estate in the purchaser, Ella V. Chase, and to satisfy and extinguish the lien of said mortgages held by said Chase as to said undivided two-thirds of said real estate.

3d. That an agreement between Ella V. Chase and Charles M. McCabe, who has no right to be protected, for which it is necessary to keep said mortgages alive as to said two-thirds of said real estate, will not operate to

defeat the legal consequences of the assignee's sale, and will not operate to keep said mortgages alive.

3½. That there being no intervening liens or incumbrances that make it necessary to the protection of the rights of said Chase, that her mortgage liens should be kept alive as to said two-thirds of said real estate, said mortgages, as against the interest in said real estate of the plaintiff, must be regarded as paid and extinguished.

4. That plaintiff is the owner of the equitable title to an undivided two-thirds of said real estate, which title is superior to and unaffected by said mortgages; that said mortgages, the decree of foreclosure and the sheriff's sale, by virtue of the certified copy of said decree, constitute a cloud upon the plaintiff's interest in said real estate, acquired at the sheriff's sale under the execution issued on his judgment, and plaintiff is entitled to have his title quieted, and the sheriff, the defendant Simmerman, enjoined from executing a deed to said Chase for any more than the undivided one-third interest in said real estate.

To these conclusions of law, and each of them, the plaintiff and defendants each separately and severally excepted; thereupon the defendants filed their joint and several motions for a new trial, which were overruled and exceptions properly taken. The court then rendered judgment in accordance therewith.

As will be observed, it is averred in the complaint that appellant's mortgages and decree of foreclosure were fully paid and satisfied.

The finding set out shows, "that said mortgage debt and decree of foreclosure remained wholly unsatisfied at the time of the sheriff's sale under the decree of foreclosure, unless the purchase of the real estate at the assignee's sale aforesaid by the assignee of the mortgages (appellant) operated as a merger and satisfaction of the

mortgages so far as they affected the real estate in question.''

It is averred, in the complaint, that the assignee, Redenbaugh, sold the real estate described in the complaint under an order of the court authorizing and directing a sale thereof ''free from the incumbrance of said mortgage lien, one-third of the purchase-money to be paid in cash, one-third in six months and one-third in twelve months, the proceeds to be applied in payment and satisfaction of the mortgage liens, first in the order of their priority.''

But the finding shows, ''that said assignee gave notice that said real estate should be sold as required by said order, but after ten months of unsuccessful endeavor to sell * * * under said order, all attempt to sell at * * * private sale was abandoned, and without any further order of the court said assignee proceeded, under the general authority and powers granted to assignees under the assignment laws of the State, to advertise and offer said real estate for sale at public auction to the highest bidder,'' one-third of purchase-money cash, and balance in two equal payments, due in three and six months respectively, no mention being made in such notice of sale that the same would be sold free from incumbrances.

Elsewhere in the finding it is shown that the order of sale, which had been made and abandoned, required a sale at private sale at not less than the full appraised value, and that such value was $3,000. It seems manifest, therefore, that the allegations of the complaint with reference to the claim of satisfaction of the mortgage or foreclosure decree are not sustained by the finding.

The question of law upon which the decision of the court is made to turn is as to whether the purchase by appellant at the assignee's sale, she being at the time

the holder of mortgages upon which a suit was then pending in said court against the mortgagors Wilkins and wife, and the assignee, operated to merge her mortgage title. The court below concluded there was a merger of the mortgage title as to two-thirds of the real estate.

In our opinion, the first conclusion of law that the fee-simple title to the undivided one-third of the real estate was in Catharine E. Wilkins, and as to it appellee had no interest, is subject to the modification, that the interest having been sold under appellant's decree of foreclosure, unless redeemed, would ripen into a title in the purchaser.

It is shown by the findings that, prior to March 2, 1885, Wilkins, who was then the owner of the tract in controversy, executed certain mortgages, in which his wife joined, being those upon which appellant's decree of foreclosure is founded, and that the decree was rendered in appellant's favor against the mortgagors and the assignee; that on said day said Wilkins made an assignment of all his property, real and personal, for the benefit of all his creditors, but his wife did not join in the execution of the deed; that said Wilkins was the owner in fee of said real estate on April 15, 1882, and continued so to be until the assignment aforesaid, subject to appellant's mortgages, during all of which time Catharine was the wife of said Wilkins, including the time of the assignee's sale and the recovery of appellant's decree of foreclosure.

It is clear, from these findings, that the deed of assignment and assignee's sale operated to pass the title only to the undivided two-thirds of the realty, leaving the remaining one-third vested in Catharine, subject to the aforesaid mortgages. *Wright* v. *Gelvin, Trustee,* 85 Ind. 128; *Lawson* v. *DeBolt,* 78 Ind. 563.

The second conclusion of law, "that the sale of said real estate at public auction had the effect to vest the equitable title to an undivided two-thirds of said real estate in the purchaser, Ella V. Chase, and to satisfy and extinguish the lien of said mortgages held by her, as to said undivided two-thirds of said real estate," is founded upon the idea of a merger of the mortgage title in the alleged equitable title therein. It is evident that if the assignee's title merged the mortgage liens, then the transfer of that title passed the property free from the mortgage liens, and the same was subject to appellee's execution against Myers. But, if the assignee's title did not merge the mortgage liens, then it was subject to said mortgage liens and decree of foreclosure, not only in the hands of McCabe, but likewise in the hands of Myers. That a judgment is a lien only on the title owned by the judgment defendant, and that the lien is subject to all outstanding equities, and that a judgment defendant is not an innocent purchaser are propositions too familiar to require the citation of authorities. But purchasers, whether judgment defendants or not, "can not rely upon the record as showing a merger, inasmuch as merger generally takes place or not according to the actual or presumed intention of the mortgagor. They must go beyond this and ascertain whether there has been a merger in fact, and they act at their own peril if they do not require their grantor to produce the mortgage and note supposed to be merged and discharge the mortgage of record, or show that it constitutes a part of the title to the estate." 1 Jones Mortg., section 872.

If there was no merger as between appellant and McCabe, then there is no merger in this case. We conclude there was no merger, because no title, either legal or equitable, ever vested in appellant under the assignee's

sale, although the court concludes, as matter of law, that the purchase by appellant at assignee's sale vested in her an "equitable title to an undivided two-thirds of said real estate." We think the facts found do not justify the conclusion. It is found that McCabe advanced to appellant "the money * * * used by her in buying the real estate at the assignee's sale; that she assigned the certificate to McCabe to secure him in the amount * * * advanced, with the agreement * * * to keep the mortgage liens alive and prevent a merger; and said certificate was finally, by consent of appellant, * . * * used by McCabe and accepted by him in satisfaction of the claim for money advanced, as aforesaid."

The equitable title could not have vested in appellant by reason of these facts at the time of her bid, for had she failed to complete the purchase by paying the amount of such offer it would not be contended that she had acquired any vested right in the land. If it could be said the title vested in her by the execution of the certificate of purchase, it vested subject to the superior rights of McCabe, who furnished the purchase-money under an agreement made at the time, by which he was to have the certificate assigned to him as security. But no title was conveyed until the sale was approved and confirmed by the court, and then it was confirmed in McCabe and not in appellant. There was no merger, because if any title did vest in appellant, it was only an incomplete equitable title, and one equity will not swallow up another. One may have as many equitable claims upon a piece of land as he can obtain, and they will all subsist without merger, for it may take them all to make a complete equitable title, but when the holder of any one or all of these equitable claims is invested with the legal title, there being no reason for keeping them alive, they are deemed merged in the greater title.

4 Kent's Com. (12th ed.), p. *99, section 5; 15 Am. & Eng. Encyc., etc., 313, 314, 319.

In this case there can be no merger, because if any title did vest in appellant it was less extensive and comprehensive (being for the undivided two-thirds only) than the mortgage title, which covered the whole estate. 15 Am. & Eng., etc., 319, citing, *Wills* v. *Cooper*, 25 N. J. L. 137; *Hunt* v. *Hunt*, 14 Pick. (Mass.) 374; *James* v. *Morey*, 2 Cow. (N. Y.) 246.

In *Wills* v. *Cooper*, *supra* (1 Dutcher's Rep. 165), it is held that where the legal and equitable estates become vested in the same person the latter will be absorbed; that for this purpose, however, the two estates must be co-extensive or commensurate, or more accurately, the legal estate must be equally extensive with or more extensive than the equitable estate, for the equitable fee will not merge in a partial or particular interest. Besides this, there was no merger, for the reasons that it was contrary to appellant's intention and contrary to her interest. The true test of merger is the intention of the party, either expressed or implied. If the intention has not been expressed it will be sought for and ascertained in all the circumstances of the transaction. If it appears from all the circumstances to be for the benefit of the party acquiring both interests, that merger shall not take place, but that the equitable or lesser estate. shall be kept alive, then his intention that such a result will follow will be presumed and equity will carry it into execution by preventing a merger. If, from all the circumstances, a merger would be disadvantageous to the party, then his intention that it should not result will be presumed. Pomeroy Eq. Jur., section 788; Jones Mortg., 870–3; *Elston* v. *Castor*, 101 Ind. 426 (442); *Haggerty* v. *Byrne*, 75 Ind. 499; *Hanlon* v. *Doherty*, 109 Ind. 37; *McClain* v. *Sullivan*, 85 Ind. 174; *Thomas* v.

*Simmons,* 103 Ind. 538; 15 Am. & Eng. Encyc., etc., 315, note 1; Boone Mortg., 141–3.

"It may therefore be deduced from the authorities, as a general rule, that when the mortgagor acquires the equity of redemption, in whatever way, and whatever he does with his mortgage, he will be regarded as holding the legal and equitable titles separately, if his interest requires this severance; the law presumes the intention to be in accordance with his real interest, whatever he may have at the time seemed to intend." Jones Mortg., section 873.

That appellant's interest required her to prevent a merger of her mortgage is beyond cavil. *Wright* v. *Gelvin, Trustee, supra.* It is equally clear from the findings of the court that her intention was to keep the estates separate, and prevent a merger. Even without such express agreement, her conduct plainly declares her intention. She immediately transferred her certificate of purchase, went forward with her foreclosure suit, and obtained a decree against the entire estate for the full amount due her, which was rendered three days after her purchase at assignee's sale, and upon the very day when assignee's title was confirmed in McCabe. These facts conclusively show that it was not only the intention of appellant to hold her entire mortgage title intact, but the understanding of McCabe that he took only the assignee's title subject to the mortgage, but added to this indubitable evidence of design. The finding shows it was the express understanding and agreement between her and McCabe, that the certificate was assigned to secure him the amount of money advanced, and to keep the mortgage liens alive and prevent a merger. If such was the agreement there is nothing to prevent its operation. The finding shows the mortgage debt was unpaid, amounting to over $2,000, and that her decree remained

unsatisfied of record.    It having been recognized by all the parties as a valid, subsisting decree, it does not lie in the mouth of appellee, in a court of conscience, to insist on a merger that will operate to extinguish two-thirds of an indebtedness due appellant of over $2,000.

The· judgment of the trial court is reversed with directions to restate its conclusions of law, and render judgment for the defendant, Ella V. Chase, in accordance with this opinion.

McCABE, J., took no part in this opinion.

Filed Dec. 18, 1894; petition for a rehearing overruled Feb. 19, 1895.