## In re ERSKINE.

### VOSS v. TAYLOR et al.

(Circuit Court of Appeals, Seventh Circuit. June 20, 1924. Petition for Rehearing Overruled August 15, 1924.)

No. 3298.

1. **Bankruptcy ⬤⟶440—Decision of question between trustee and adverse claimant of property was a "controversy arising in bankruptcy proceedings," and reviewable by appeal.**

A claim by the representative of the deceased wife of a bankrupt, who died after the bankruptcy, to a statutory dower interest in the real estate of the bankrupt, when by consent submitted to the bankruptcy court, involves a "controversy arising in bankruptcy proceedings," and the decision is reviewable by appeal, under Bankruptcy Act, § 24a (Comp. St. § 9608).

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Controversy Arising in Bankruptcy Proceedings.]

2. **Bankruptcy ⬤⟶440—Petition to revise may be treated as appeal.**

Act Sept. 6, 1916, § 4 (Comp. St. § 1649a) providing that an appellate court shall disregard a mistake or error in the manner of bringing up a matter for review, and shall take the action which would be appropriate if the proper procedure had been followed, is applicable to proceedings for review of the decision in a controversy arising in bankruptcy proceedings, and a petition to revise will be treated as an appeal.

**3. Bankruptcy** ⟨⟩143(8) — **Adjudication held not to convert inchoate right of wife in real estate into vested interest.**

An adjudication of bankruptcy against a husband does not effect his civil death, so as to convert the inchoate rights of his wife in his real estate into a vested interest, under Burns' Ann. St. Ind. 1914, §§ 3014, 3029, 3037, 2864, and on the death of the wife, her husband surviving, her rights are extinguished.

Petition to Review and Revise an Order of the District Court of the United States for the District of Indiana.

In the matter of Wilbur Erskine, bankrupt. Petition by Harry W. Voss, trustee, to revise an order of the District Court made on petition of Harold Taylor, trustee, under the will of Mary E. Erskine, deceased, and Wilbur Erskine. Reversed and remanded.

Henry B. Walker, of Evansville, Ind., for petitioner.

Harold Taylor, of Indianapolis, Ind., for respondents.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Wilbur Erskine, on December 20, 1921, when adjudicated a bankrupt, was a resident of the state of Indiana, and was married to his first wife, who died March 21, 1922, survived by her husband and two children. Before the filing of the petition and adjudication, bankrupt owned, in fee simple, a considerable amount of real estate. His wife left a last will and testament, naming respondent Taylor trustee thereunder. Petitioner Voss was elected trustee of the bankrupt estate.

After the death of the wife, who had never joined in any conveyance, the real estate was sold, by stipulation between petitioner, respondent and bankrupt, all parties joining in the deeds. The rights of respondent, as trustee under the will, were, by agreement of all of the parties, submitted to the court in bankruptcy, and its holding was favorable to the claim of respondent and bankrupt that, upon the filing of the petition and the adjudication in bankruptcy, the wife became vested with the same rights in the estate of the bankrupt that she would have had thereunder had she survived her husband.

[1] This case is brought here by petition to review and revise, and a motion is made to dismiss on the ground that the case should have been brought here by appeal. In support of his contention that this case is properly before this court on a petition to review and revise, petitioner's main reliance is upon Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008. Because of the difference between the facts in that case and the case at bar, it is inapplicable here to support petitioner's contention. In that case a creditor filed his claim, and it was allowed in bankruptcy. In connection therewith, and as a part thereof, he asked for priority, and the court held that the claim for priority was merely incident to the allowance of the claim. In the case at bar, respondent is not a creditor and is not seeking the allowance of a claim, as such. The sole thing that respondent and bankrupt are seeking to do is to have carved out and set aside to them, as their property, free from administration in bankruptcy, a very considerable portion of the property which would otherwise be administered in bankruptcy and distributed to creditors.

This court in Re Breyer Printing Co., 216 Fed. 878, 133 C. C. A. 82, pointed out so clearly the distinction between "proceedings in bankruptcy" and "controversies at law and in equity arising in the course of bankruptcy proceedings" that it will serve no good purpose to add to what was there said. We there also discussed Coder v. Arts, supra, and other leading cases wherein there is pointed out the distinction between "proceedings in bankruptcy" and "controversies at law and in equity arising in the course of bankruptcy proceedings."

It seems clear, under the facts in the instant case, that the question here involved is one "between the * * * trustee representing the bankrupt and his general creditors, as such, on the one hand, and adverse claimants [respondents] on the other, concerning property in the possession of the * * * trustee * * * to be litigated in appropriate plenary suits, and not affecting directly administrative orders and judgments, but only the extent of the estate to be distributed ultimately among general creditors." This is the language of In re Breyer Printing Co., supra.

Counsel for petitioner rely upon In re Petronio, 220 Fed. 269, 136 C. C. A. 285 in which we held that the proceeding in the District Court was of a summary nature, citing In re Goldstein, 216 Fed. 887, 889, 133 C. C. A. 91, 93, and In re Breyer Printing Co., supra. In the Goldstein Case, after distinguishing between summary and plenary methods of procedure, we said:

"The District Court may pursue the summary method to the point of ascertaining that the alleged adverse claim is substantial

and not merely colorable. * * * A conclusion that 'the alleged adverse claim is a cover for the claimant's possession as agent or bailee of the bankrupt cannot be permitted to be reached by the District Court's rejection of the sworn answer and testimony, and thereupon finding that the alleged adverse claim is fraudulent. That end can only be attained if it is the just conclusion of a due trial of a plenary suit."

That was a petition to review and revise, which raised only the question of the jurisdiction of the court to enter any order other than one of dismissal, after it was ascertained that there was a claim to property that was not merely colorable. The Petronio Case is of like character. There the District Court in the face of the fact that its jurisdiction was disputed, and the further fact that a substantial and not a colorable claim was set up, proceeded to adjudicate the matter in a summary way, and therefore both the Petronio and Goldstein Cases were reviews of summary orders in bankruptcy

The other authorities cited by petitioner are in harmony with the authorities here cited. The proceeding in the District Court was not a summary proceeding, but was a plenary proceeding, heard and decided in that court, and consent of the parties could not affect the method of procedure to procure a review.

[2] For the above reasons, this case would have to be dismissed from this court, except for the provisions of section 4 of an Act of September 6, 1916 (39 U. S. Stats. at L. p. 727; section 1649a, U. S. Compiled Stats. 1916):

"That no court having power to review a judgment or decree rendered or passed by another shall dismiss a writ of error solely because an appeal should have been taken, or dismiss an appeal solely because a writ of error should have been sued out, but when such mistake or error occurs it shall disregard the same and take the action which would be appropriate if the proper appellate procedure had been followed."

While it is true that this section does not mention petitions for review, yet the clear legislative intent seems to be to remove the penalty for having misconceived a remedy. As the foregoing discussion shows, it has been easy to misconceive the remedy in matters coming from bankruptcy courts, and the difficulty in this case arose because counsel conceived that the matter dealt with was a proceeding in bankruptcy, reviewable under section 24b (Comp. St. § 9608),

instead of a controversy arising in the bankruptcy proceeding, reviewable under section 24a. In enacting section 4, supra, Congress was not attempting to deal with appellate jurisdiction in proceedings in bankruptcy, but was dealing with appellate jurisdiction touching controversies arising in bankruptcy. Controversies arising in bankruptcy are lawsuits of the same kind and quality as other lawsuits not involved in bankruptcy. All such cases come to this court by appeal or writ of error, and we are of opinion that the use made of the terms "appeal" and "writ of error" should not be held to be a limitation upon what seems to be the broad command of the act not to dismiss a case merely because the remedy was misconceived, especially where, as here, the record before us is in all respects the same as it would be on appeal. We shall consider the matter as here on appeal.

[3] Respondent Taylor, trustee, repudiates the suggestion of petitioner that he claims any title under the Indiana Judicial Sales Act of 1875, p. 178 (sections 3052 and 3055, Burns' 1914), but asserts "that the rights and interests of his decedent [Mary E. Erskine] in and to the lands of said bankrupt vested in her upon the adjudication by operation of law and by virtue of the general laws of the state of Indiana, being sections 3014, 3029, 3037 and 2864, Burns' 1914," which are, respectively, sections 17, 27 and 35 of the act of 1852 (Rev. St. 1852, c. 27) regulating descents, and section 122 of the Decedents' Estates Act of 1881, c. 45, for the settlement and distribution of estates.[1]

---

[1] "17. If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors: Provided, however, that where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars, one-fifth only, as against creditors."

"27. A surviving wife is entitled, except as in section 17 (section 2483) excepted, to one-third of all the real estate of which her husband may have been seized in fee simple at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law; and also of all lands in which her husband had an equitable interest at the time of his death: Provided, that if the husband shall have left a will, the wife may elect to take under the will instead of this or the foregoing provisions."

"35. No act or conveyance, performed or executed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof in the manner required by law; nor any sale, disposition, transfer or incumbrance of the husband's property, by virtue of any decree, execution or mortgage to which she shall not be a party (except as provided other-

What respondent's argument means by a vesting upon adjudication by operation of law seems to be based upon three things: (a) That under section 70a (5) of the Bankruptcy Act (Comp. St. § 9654) the inchoate right of dower of the wife does not pass to the trustee; (b) that upon adjudication, "so far as the bankrupt's property was concerned, after the adjudication, he was, as it were, civiliter mortuus; his rights in the property were the same as though he were dead"; (c) that, by reason of (a) and (b), there was vested absolutely in the constructive widow all of the rights that she would have had as actual widow of a deceased husband.

(a) may be conceded. In Bank v. Sherman and Hickling v. Sherman, 101 U. S. 403, 25 L. Ed. 866, relied upon in support of proposition (b), dower rights were not involved, but the court, commenting upon the effect of filing petition in bankruptcy, said:

"The filing of the petition was a caveat to all the world. * * * Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. * * * If it were against him, they were extinguished as to him and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, civiliter mortuus."

We think that what was said in Re Dayton Coal & Iron Co. (D. C.) 291 Fed. 390, as to a part of the above quotations is reasonably applicable to all of it. The statement, "The bankrupt became, as it were, for many purposes, civiliter mortuus," we think is used more as an illustration than as a judicial determination, and certainly should not be held to have any influence on the determination of the issue in this case. In Platner v. Sherwood, 6 Johns. Ch. (N. Y.) 118, 123, it is said:

"But the civil death spoken of in the books, is of two kinds: (1) Where there is a total extinction of the civil rights and re-

lations of the party, so that he can neither take nor hold property, and his heirs succeed to his estate in the same manner as if he were really dead, or the estate is forfeited to the crown. (2) Where there is an incapacity to hold property, or to sue in the king's courts, attended with forfeiture of the estate to the crown. Of the first kind, are the cases of monks professed, and abjuration of the realm; all the other cases are of the second kind. Strictly speaking, there are but two cases of civil death; those of a monk professed, and an abjuration of the realm."

The bankrupt here was not in either class. One against whom a petition in bankruptcy has been filed, and against whom adjudication has been had, is not under any disability of any kind or character, except that his right to deal with the property owned at the time of the filing of the petition is in some ways restricted. He is under no civil disability whatever. Even as to his property that passes to the trustee by operation of law upon adjudication as of the time of filing the petition he still may deal with it in certain ways. He has the power either before or after adjudication to contract with his creditors for a composition (Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U. S. 269, 44 Sup. Ct. 506, 68 L. Ed. 1013, opinion filed May 26, 1924), and such dealing is a matter of common and almost daily practice. In all cases, upon confirmation of composition, either before or after adjudication, the property that passes by operation of law to his trustee, again, by operation of law, passes from the trustee to him. Section 70f, Bankruptcy Act (Comp. St. § 9654). In most states, a bankrupt has exemptions, sometimes returnable to him in personal property, sometimes out of the real estate as a homestead. If a bankrupt is in any sense civiliter mortuus, he is not so in any such sense as would contribute or give effect to any section of the Indiana statute cited.

Counsel say that cases construing section 70a have uniformly held that the title of the trustee vests as of the date of adjudication, and that the wife's inchoate interests vest in her at the same time. No cases are cited. A wife's inchoate rights vest upon marriage or when the property is acquired after marriage. Unless there is some provision of some Indiana statute that operates to change the widow's inchoate right and increase it to a present fixed right, upon adjudication against the husband in bankrupt-

wise in this act), shall prejudice or extinguish the right of the wife to her third of his lands or to her jointure, or preclude her from the recovery thereof, if otherwise entitled thereto."

"122. If the decedent leave a widow, and the real estate owned by him at his death shall not exceed ten thousand dollars in value, the court shall direct the sale of the undivided two-thirds parts thereof for the payment of said debts and liabilities; and if the value thereof exceed ten thousand dollars, and do not exceed twenty thousand dollars, the court shall order the sale of the undivided three-fourths thereof; and, if it exceed in value twenty thousand dollars, the undivided four-fifths thereof, for said purpose."

cy, then there is not at the time of the vesting of the husband's estate in the trustee any change whatever in the wife's rights. The purpose of section 70a is not to affect or change the wife's interest. Quite the contrary is true. It simply leaves a wife's interest where it finds it. In Porter v. Lazear, 109 U. S. 84, 86, 3 Sup. Ct. 58, 27 L. Ed. 865, the court cites English authorities, and says:

"By the law of England, which is our law in this respect, except so far as it has been changed by statute, the wife's right of dower is no part of the estate of the husband, and is not affected by proceedings in bankruptcy against him."

In Davis v. Kelley, decided by the Supreme Court of Indiana February 2, 1912, and reported in 179 Ind. 13, 97 N. E. at page 336, discussing section 3052, Burns' Ann. Statutes, a section of the Judicial Sales Act of 1875, said (179 Ind. 16, 97 N. E. 337):

"A proper construction of the act of 1875, as applied to the facts of the present case, requires the determination of the law prior to its passage. Under the statutes of 1852, a wife's inchoate interest in the real estate of her husband might become absolute in two ways: (1) Where a husband dies seized of real estate, the widow took by descent, as her husband's heir, under section 17 of the statute of descents, being section 2483, R. S. 1881 (section 3014, Burns' 1908). (2) Where the husband's title was divested during coverture the wife not joining in any conveyance, the wife took, upon surviving her husband, not by descent, but by virtue of her marital rights, under section 27 of the statute of descents, being section 3029, Burns' 1908 (section 2491, R. S. 1881). * * *

"It is evident that, when a husband's land was sold at judicial sale prior to the taking effect of said act of 1875 (Acts 1875, p. 178), and the husband subsequently died leaving his wife surviving him, the wife took title in fee simple, not by descent, but by virtue of her marital rights under said section 27 [section 3029, Burns']. * * * Prior to that time, where a husband's land was sold at judicial sale, the inchoate interest of the wife did not become absolute until the husband died, leaving the wife surviving him. During the husband's lifetime the entire title, together with the right of possession, was vested in the purchaser at the judicial sale. If the wife died during the husband's lifetime, her inchoate right was defeated altogether, and the title of the purchaser at the judicial sale became absolute. The purpose of the act of 1875 was to alter these rules of law by providing that the wife's interest should become absolute without reference to her survivorship of her husband [citing cases]. The evident purpose of said act of 1875 was to hasten the time at which the wife's inchoate interest should become absolute in cases of judicial sales. To this extent and for this purpose the previous law was changed. * * * As the inchoate interest of the wife in the land of her husband in the conveyance of which she did not join vested in her and became absolute on the death of her husband prior to the taking effect of said act of 1875, under said section 27 of the statute of descents * * * it follows that under said act of 1875 the inchoate interest of the wife in her husband's land sold at judicial sale vests and becomes absolute under said section 27, supra, upon the consummation of such sale."

It seems clear from this decision that, in so far as the Indiana statutes are here involved, the Indiana law, except as changed by the act of 1875, under which respondent here is claiming no rights, is exactly as it was prior to said act. Sections 27 and 17, referred to in the above case, are sections 3029 and 3014 Burns', respectively, here relied on by respondent. Section 27 has reference to the rights of a "surviving wife." Section 17 disposes of the interests of the wife "if a husband die testate or intestate." There is nothing in any of the four sections, 3037, 3029, 3014, or 2864, that in the remotest degree discloses any intent on any account to hasten or advance the time when the inchoate rights of the wife shall become absolute.

A very diligent search of the Indiana authorities has failed to reveal to us any case in which the courts of Indiana have held that the wife's inchoate interest has been advanced so as to become absolute prior to the husband's death, unless such cases have been based and bottomed upon the act of 1875. Lawson v. De Bolt, 78 Ind. 563; Wright v. Gelvin, 85 Ind. 128; Chase v. Van Meter, 140 Ind. 321, 39 N. E. 455. And the same search has revealed to us many cases in which the Supreme Court of Indiana has held that the interest of the wife is conditional, depending upon her survivorship. Fry v. Hare, 166 Ind. 415, 420, 77 N. E. 803.

We are of opinion that on the death of the wife all her right in this property was

extinguished, and that no interest in the property passed to Taylor, her trustee.

The order of the District Court should be, and it hereby is, reversed, and the cause remanded for further proceedings in conformity herewith.