No. 7672.

TAYLOR v. LOHMAN.

PRACTICE.—*Evidence.*—*Supreme Court.*—Where there is no conflicting testimony shown by the record, on appeal, the Supreme Court will weigh the evidence and give it such effect as in its judgment should have been given by the trial court.

PROMISSORY NOTE.—*Principal and Surety.*—*Release.*—*Payment.*—*Reloan.* —*Fraud.*—In an action upon a promissory note, against the principals and the surety, the evidence showed that in the presence of one of the makers of the note and of the payee, the surety gave notice that he would not remain longer as surety thereon; that the maker then said to the payee, "If you will let our firm have the money on our own note we will take it, otherwise we will pay you off." To which the payee replied: "I don't want the money. I will take Taylor's" (the surety) "name off the note. I will bring down the note and fix the matter up, and either get new notes or take the money." But no new note was executed, and for several years thereafter the makers paid interest on the note, of which facts the surety was ignorant, and after their insolvency this suit was instituted.

*Held*, that the transaction amounted to a payment of the note and a reloan of the money to the makers, and that the surety was thereby discharged from any liability thereon.

*Held*, also, that keeping a surety so long in ignorance that the note had not been paid, or exchanged for the note of the principals, had all the effect of a fraudulent concealment of the facts, whether so intended or not.

From the Jefferson Circuit Court.

*C. E. Walker* and *W. S. Roberts*, for appellant.
*C. A. Korbly*, for appellee.

NEWCOMB, C.—Lohman sued John Pattie, John A. Pattie and Thomas R. Smith, formerly partners as Pattie, Smith & Co., and the appellant, upon a promissory note, on which Pattie, Smith & Co. were the principals and the appellant was surety. The makers were defaulted. Taylor answered, and the issues raised by his pleadings were submitted to the court for trial, which found for the plaintiff. Taylor moved for a new trial, and for cause alleged that the finding was contrary to law; that it was contrary to the evidence, and that it was not supported by the evidence. The motion was overruled, and judgment entered on the finding. The question before us is, did the court err in overruling the motion for a new trial? The case comes here on the evidence solely. This is brief, and as it discloses the nature of the defence pleaded, and is necessary to an understanding of the question involved, we state it. The defendant first introduced the note in suit, which was dated February 11th, 1870, payable twelve months after date, with ten per cent. interest. Credits of the interest accrued up to July 30th, 1876, and payments of $100 March 22d, 1873, and $200 May 17th, 1877, were endorsed upon the note. The remaining evidence is thus given in the bill of exceptions: "John Taylor, defendant, on his own behalf, testified as follows, to wit: Was first shown the note sued on, and says it is his signature; that he signed it as security for Pattie, Smith & Co.; that the note was executed by Pattie, Smith & Co. some weeks before he signed it; that there were two notes signed by him. Mr. Lohman had the note sued on in his possession at the time I signed it. The two notes amounted to eight hundred dollars, and were both signed at the same time. From four to six months after the notes were due, I asked Mr. Lohman, in the city, if the notes had been paid. He said, 'No.' I then told him to go and see Mr. Pattie and have them settled up. A week later I came down to town and called at Pattie's office, but did not see Lohman at that time. Two

weeks later I saw Mr. Lohman go into Pattie's office, and I thought it would be a good time to get them both together, and I followed him into Pattie's office and told him I wanted my name off the notes. Lohman and Pattie were both in there together. I told Lohman I was settling up my affairs, and that I wanted my name off the notes; that I was not willing to stand any longer. Then Pattie said to Lohman: 'If Taylor wants his name off the notes, and you won't take the note of the firm without any individual security, then bring down the notes and I will pay them off.' Mr. Lohman then agreed to bring down the notes and take a new note, and I was to be released. He said he hadn't got them with him that day, they were up on the hill at his house, and he agreed to bring them down and get Pattie's new notes, and I was to be released. I never heard from Lohman, nor Pattie, Smith & Co. again until after Pattie failed. I knew nothing about the fact that Lohman had not fulfilled his agreement. I supposed all the time that the notes were paid or a new one given.

"Cross-examined.—'I never gave any written notice to Lohman to sue.'"

John Pattie testified: "I heard Taylor's testimony about the conversation. Mr. Taylor wanted his name off the notes. I told Lohman I would not give any other security. If he would let us, Pattie, Smith & Co., have the money on our own note, we would keep it; otherwise, would pay him off. He said he did not want the money; he would take Taylor's name off the notes. He did not have the notes with him. He said he would bring down the notes and fix the matter up—get new notes or take the money. We had the money in bank to pay the notes."

"It was admitted by plaintiff that Pattie, Smith & Co. have become insolvent, and are insolvent. One of the notes was paid by Pattie, Smith & Co."

And this was all the evidence.

Uncontradicted, as it was, did it disclose a defence to the note as to the surety? We think it did. The agreement of Lohman to reloan the money to Pattie, Smith & Co. on their own note, or to take the money due and surrender the note on which Taylor was surety, was calculated, in the language of the authorities, to lull him into security, and prevent him from obtaining his indemnity. 2 Parsons Notes and Bills, 502; *Roberts* v. *Miles*, 12 Mich. 297; *Harris* v. *Brooks*, 21 Pick. 195; *Whitaker* v. *Kirby*, 54 Ga. 277; *Thornburgh* v. *Madren*, 33 Iowa, 380; *Carpenter* v. *King*, 9 Met. 511; Brandt Suretyship, etc., sec. 211; and see *Musgrave* v. *Glasgow*, 3 Ind. 31.

This action was commenced December 26th, 1878, more than seven years after the arrangement by which Taylor was to have been released from his liability on the note. The record does not show when Pattie, Smith & Co. became insolvent, but it was probably but a short time before suit, as they paid $200 of the principal of the note May 17th, 1877, and on July 16th, 1878, paid all the interest due to that date. During all this time no notice was given to the surety that the arrangement made between himself, Lohman and Pattie, Smith & Co. had not been consummated. From the anxiety manifested at that time by Taylor, to be discharged from his liability on the note, the conclusion is irresistible that he would have given statutory notice to the holder to seasonably sue thereon (2 R. S. 1876, pp. 276-7), or have taken other measures to protect himself. To keep the surety so long in ignorance that the note had neither been paid, nor exchanged for the note of Pattie, Smith & Co., had all the effect of a fraudulent concealment of facts, whether so intended or not.

Had there been no element in the case, other than mere delay on the part of the appellee to enforce payment of the note, the surety would not be discharged from liability; but, by the agreement testified to by the witness Pattie, if the appellee did not elect to receive payment from Pattie,

---

Taylor *v*. Lohman.

---

Smith & Co., the loan was to be continued on their individual credit. According to the testimony of this witness, Lohman stated that he did not want the money; and that he did not, but preferred that it should be on interest, is further evident from his failure, for so many years, to collect the principal, and his usual promptitude in collecting the interest. On the facts proved, we think the acts of the appellee show a reloaning of the money to Pattie, Smith & Co.

There being no conflicting testimony, this court will weigh the evidence, and give it such effect as, in its judgment, should have been given by the court which tried the cause. *Jamieson* v. *Miller*, 54 Ind. 332 ; *Roe* v. *Cronkhite*, 55 Ind. 183.

For error of the court below, in overruling appellant's motion for a new trial, the judgment ought to be reversed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment below be, and the same is hereby, in all things reversed, at the costs of the appellee, with instructions to the Jefferson Circuit Court to grant the appellant a new trial.

## ON PETITION FOR A REHEARING.

BICKNELL, C.—The petition claims that the evidence did not sustain the answer. The first paragraph of the answer sets forth the facts specially, alleging that thereby the defendant "was discharged from all liability on the note." Among the facts stated was the following : "That the plaintiff then and there did reloan said money to Pattie, Smith & Co., and kept it on loan to them alone from 1872 to 1878."

The second paragraph alleged payment of the note by Pattie, Smith & Co. before suit brought. The third paragraph pleaded a discharge of the defendant by the plaintiff, for a good and valuable consideration.

The evidence is fully stated in the opinion of the court heretofore given.

We think that the evidence did sustain the answer. When

one of the principal debtors and the surety and the creditor met together, and the surety gave notice that he would not stand any longer on the note, etc., the principal debtor then had the money to pay the notes, and proposed to the creditor to pay them, or give a new note of the principal alone. He said : "If you will let our firm have the money on our own note, we will take it, otherwise we will pay you off." · The creditor replied : "I don't want the money. I will take Taylor's name off the notes. I will bring down the notes and fix the matter up, and either get new notes or take the money." If the notes had been there, and had been cancelled, or Taylor's name "taken off," and a new note given of the firm alone, the surety would have been discharged. That would have been equivalent to an actual payment of the money, and a reloan of it to the firm alone ; and, whether the notes were formally cancelled or not, and even if they had remained in the possession of the creditor, the payment of the money and a reloan of it to the firm, on their note alone, would have discharged the surety ; and in such a case it would make no difference whether the money was actually handed over to the creditor and then reloaned to the principal debtors, or whether it was permitted to remain in their hands as a new loan to them, in execution of an agreement to that effect; the merely formal act of handing over the money and then returning it would not be indispensable to make such a transaction a payment and a reloan.

The evidence in the case shows that the special transactions between the parties took place in 1871, and that the principal debtors paid interest on the money for several years afterward, and actually paid the money mentioned in one of the notes ; the last payment of interest on the note in suit was in July, 1878, and this suit was brought in December, 1878 ; the principal debtors having become insolvent, and the note in suit having been permitted to remain in the possession of the creditor, he brings suit upon it, claiming that

the transactions proved amounted to nothing, and that his agreement in the premises amounted to nothing, because it was without consideration. The evidence shows that his agreement was executed, the only inference that can be made from the facts proved, consistent with honesty and fair dealing upon the part of the creditor toward the surety, is that the transaction amounted to a payment of the original notes and a reloan of the money to the principal debtors. The original notes having been paid the surety was discharged, whether the notes were left in the creditor's possession or not, and whether a new note of the firm was taken or not. It is not necessary to refer again to the authorities cited in the former opinion. We think the facts did sustain the answer.

The petition for a rehearing ought to be overruled.

PER CURIAM.—Petition overruled.