Spurgeon v. Smitha et al.

Filed May 10, 1888.

---

No. 13,268.

## SPURGEON v. SMITHA ET AL.

SURETIES.—*Discharge by Refusal of Creditor to Accept Payment when Tendered.* —A creditor impliedly undertakes that the debt due him may be paid at maturity, and if he refuses to accept the amount when tendered, the sureties in the obligation are discharged from liability.

SAME.—*Promissory Note.—Reloaning Money to Principal.*—Where the holder of a note, when payment is tendered by the principal debtor at the ma-

turity of the obligation, accepts part of the amount due, and, with knowledge that the other makers are sureties, reloans the balance to the principal, the sureties are thereby released.

SAME. — *Tender.*— *Waiver.*—Where the money is actually produced and offered, and the creditor does not object to the tender, but requests the debtor to retain the money, he can not subsequently insist that the tender was not sufficient.

PLEADING.— *Word "Reloan" Describes a Fact.*—An averment that money was reloaned for a definite time is the averment of a fact, and not of a mere conclusion.

From the Jefferson Circuit Court.

*J. McGregor* and *C. E. Walker*, for appellant.

*A. D. Vanosdol, H. Francisco, E. G. Leland* and *S. E. Leland*, for appellees.

ELLIOTT, J.—The appellant's complaint is founded on a promissory note executed by the appellees. The second paragraph of the answer of the appellees avers that they executed the note as the sureties of William R. Smitha; that the appellant knew the capacity in which they executed the note ; that their principal paid him two hundred and forty dollars ; that the appellant thereupon reloaned the remainder of the sum due him to William R. Smitha, without the knowledge or consent of the appellees.

The second paragraph of the answer avers the fact of suretyship and the appellant's knowledge, and also avers that after the note matured the principal tendered to the appellant the amount of the note ; that he accepted two hundred and forty dollars in part payment of the note, and agreed with William R. Smitha that he should retain the remainder, paying interest thereon for one year.

The third paragraph of the answer is substantially the same as the second.

The fourth paragraph is a plea of payment.

The contract made by the creditor and the principal, wherein the former, after accepting part payment of the debt, reloaned the latter the remainder of the money due, released

the sureties. Sureties, as is well known, have a right to stand upon the letter of their contract, and if a creditor assumes to change the contract he releases them from liability. According to the averments of the first paragraph of the answer, the creditor, knowing that the appellees were sureties, made a radical change in the contract by reloaning part of the money due him to the principal, and he has lost all claim upon the sureties.

The averment that the money was reloaned to the principal debtor for one year is the averment of a fact, and not of a mere conclusion. *Taylor* v. *Lohman*, 74 Ind. 418 (422). The word "reloan" describes a fact—the act of lending money a second time, or oftener. The evidence required to establish the fact is a very different thing from the fact itself, and not only need not be pleaded, but can not be pleaded without a violation of the rules of pleading.

The act of the creditor, in refusing the money tendered him by the principal debtor, released the sureties. The sureties had a right to rely upon the performance of the contract by the principal and upon the acceptance of performance by the creditor. This much was implied in their contract, and as the creditor declined to accept performance when tendered him, he departed from the contract, and released the sureties. *Post* v. *Losey*, 111 Ind. 75 (60 Am. R. 677). A creditor impliedly undertakes that the debt may be paid at maturity, and if he refuses to accept the money due, when tendered him, he breaks this implied undertaking, and loses his claim upon the sureties, for the act is injurious to them.

A creditor who does any act inconsistent with the terms of the contract, or prejudicial to the interests of sureties, releases them from liability. 1 Story Eq. Jur., sections 324, 325. The refusal to accept the money tendered was, it is very clear, inconsistent with the terms of the contract, for the terms of the contract made it the duty of the creditor to accept payment when tendered him. It was also an act prejudicial to the interests of the sureties, for, if the creditor had

accepted payment, they would have been effectually discharged. The authorities fully sustain our conclusion, although the reasoning upon which some of the courts proceed is somewhat different from that pursued by us; their reasoning having for its basis the theory that the refusal of the creditor to receive the money when tendered is a fraud upon the sureties. *Sears* v. *Van Dusen,* 25 Mich. 351 ; *Donley* v. *Camp,* 22 Ala. 659 ; *White* v. *Life Association,* 63 Ala. 419 (35 Am. Rep. 45) ; *McQuesten* v. *Noyes,* 6 N. H. 19 ; *Sailly* v. *Elmore,* 2 Paige, 497 ; *Joslyn* v. *Eastman,* 46 Vt. 258 ; *Johnson* v. *Ivey,* 4 Cold. 608 ; *Hayes* v. *Josephi,* 26 Cal. 535 ; *Curiac* v. *Packard,* 29 Cal. 194 ; Brandt Suretyship and Guaranty, section 295 ; Baylies Sureties and Guarantors, 273 ; Fell Law of Guaranty and Suretyship, 520.

The case of *Clark* v. *Sickler,* 64 N. Y. 231, is not supported by authority, and, as Mr. Brandt shows, is not sound on principle. In an early case in our own reports, a doctrine very different from that asserted in *Clark* v. *Sickler, supra,* was declared.

In the case decided by this court, that of *Musgrave* v. *Glasgow,* 3 Ind. 31, the court said : " If Musgrave had actually placed the money in the hands of Glasgow for the payment of the notes, and afterwards received it back from him as a new loan, under the circumstances detailed, it can not be doubted that this would have been a payment, and Bond would have been discharged. And if the parties intended to waive the formality of passing the money from one to the other and back again, but really to consider the transaction as a payment and new loan, we do not see any good reason why it might not be so regarded by the jury."

It seems clear to us that where the creditor declines to receive the money offered him he elects to change the contract, for it is as much part of the contract that he should accept the money when tendered as that the debtor should pay it. Having elected to depart from the contract, he really made a

new one, binding only the party consenting to it, and that was the principal debtor.

In the case of *Wilson* v. *Mc Vey*, 83 Ind. 108, cited by the appellant, this court referred to Mr. Brandt's work and approved the rule as stated by him, but held that the case was not within the rule.

The court gave the jury this instruction : " It is a well settled rule of law that sureties are not to be held beyond the precise terms of their contract ; they have a right to stand upon the very terms of their contract, and if they do not assent to any variation of it, and a variation is. made, it is fatal."

There was no error in giving this instruction, for it states the law correctly, and was applicable to the evidence.

The evidence fairly supports the verdict, for it supplies ample grounds for the inference that the money was offered to the appellant by the principal debtor, and that the offer was declined, except as to part of the debt, and the debtor requested to keep the remainder. One of the witnesses says that the appellant admitted that the principal debtor "had a big roll of money in his sleeve, and pulled it out and offered to pay the balance." Another witness testified that the appellant said to him that " William R. Smitha had paid him $200 and interest, and told him that he had the rest of the money, and he," the appellant, " said I would rather he would keep the money and pay interest. He, Spurgeon, said it was not a good tender when he took out the money and offered it to him." It was said by another witness " that Spurgeon told William R. Smitha that he did not want all the money ; he wanted to keep it at interest ; that he," William, " offered him the money, but he said he did not want it, that he would rather have the interest."

It is true that the evidence does not show a strict tender, but it does show a waiver of a formal tender. The money was present and was offered the appellant, and it was by his own affirmative act that a formal tender was prevented. If

there had been no production of the money, and nothing more than a bare offer to pay the debt, it may be that the offer would not discharge the sureties; but here the offer was accompanied by the production of the money, and there was both the willingness and the ability to make immediate payment.

We do not hold that a mere offer to pay will discharge the sureties; but we do hold that where the money is actually produced and an unconditional offer made to pay it at once to the creditor, and he refuses to accept it, and asks the debtor to retain it, the sureties are discharged. Where the money is actually produced, and the creditor does not object to the tender, but requests the debtor to retain the money, he can not subsequently insist that the tender was insufficient. The act of the creditor makes the offer of the money produced by the debtor a sufficient tender, for he so characterizes it by his act.

Judgment affirmed.

Filed May 10, 1888.