RURAL ACCEPTANCE CORPORATION, AMOS PAUL CURTICE, FRANCES JANE CURTICE, THOMAS J. WARTHEN, RUBY WARTHEN *v.* BILLY EARL PIERCE, TWILA J. PIERCE.

[No. 1-872A55. Filed July 25, 1973.]

*Kunz and Kunz,* of Indianapolis, for appellant.

*Kagan and Barker,* of Martinsville, for appellees.

LYBROOK, J.—Pierce brought suit against Curtice for specific performance of a conditional sales contract involving certain real property, joining Warthen and Rural Acceptance Corporation (RAC), judgment lien holders. From a judgment quieting title in Pierce and fixing the interests and priorities of the parties, RAC appeals.

The contract was executed on January 26, 1964, and Pierce, the buyer, took possession of the realty. Curtice had mortgaged the property to Indiana Bank & Trust Company, and at trial, the outstanding mortgage balance was stipulated to be $2,721.23. Evidence revealed that Pierce made his contract payments to the bank, and they were applied to the pre-existing mortgage.

On June 27, 1967, Warthen secured judgment against Curtice in the amount of $1,000.00, and on September 9, 1969, RAC obtained a default judgment against Curtice on a note in the sum of $3,212.44, plus interest and attorney fees. In an attachment and garnishment proceeding Pierce was joined as garnishee defendant. The court ordered Pierce to continue making the land contract payments to Indiana Bank until the mortgage was satisfied, then to make payments directly to RAC in satisfaction of its judgment.

In November, 1969, Pierce ceased making payments on the advice of the bank and filed this action in December "to get these matters cleared up." Pierce also ceased paying the property taxes, but continued to pay the insurance premiums.

At trial, the balance due on the contract was $5,201.34. The evidence showed that Pierce had arranged to borrow this

sum from the bank upon receipt of title, and Pierce stood ready and willing to pay the amount into court in satisfaction of the contract obligation.

At trial, RAC argued that Pierce was not entitled to the relief sought since his failure to make payments after November 1969, had put him in default. It also contended that, under the terms of the contract, Pierce acquired no interest in the realty until the purchase price was paid in full. RAC therefore prayed that their interests be adjudged prior and superior to those of Pierce.

The trial court rejected RAC's contentions and entered judgment in favor of Pierce which reads in part as follows:

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court:

"That the plaintiff is the owner in fee simple of the real estate described in the complaint . . . and that defendant's claim thereto is without right and unfounded, and that plaintiff's title thereto be, and the same is hereby quieted and forever set at rest as against the defendant and all persons claiming under him."

\* \* \*

"That a Commissioner's Deed be prepared and executed herein to plaintiffs and title is hereby quieted as against the world."

The court further found the unpaid contract balance to be $5,201.34 and established the parties' interests and priorities in that sum as follows: (1) the mortgage in the sum of $2,721.23, (2) Warthen in the sum of $1,000.00, and (3) RAC in the sum of $1,480.11.

From this determination, RAC appeals, contending that the trial court erred in (1) granting Pierce relief outside the scope of the pleadings by quieting title in the real estate, (2) granting specific performance without proof of payment or tender of all installments of the contract, (3) finding that Pierce had any right, title or interest in the real estate, when he had failed to make some of the payments, pay the

taxes or repair a burned garage, (4) finding that Pierce had an interest superior to that of RAC, by virtue of the conditional sales contract, and (5) holding that the insurance proceeds for the loss to the garage were to be applied to the mortgage instead of being apportioned between Curtice and Pierce.

Appellant's first contention must fail when the relief granted by the court (above), is compared with the relief sought in the complaint, to-wit:

"WHEREFORE, plaintiffs ask that the defendants Amos Paul Curtice and Frances Jane Curtice be required to convey said premises to plaintiffs by Warranty Deed and in the event they refuse to do so, that a Commissioner be appointed to make said conveyance to plaintiffs upon tender of the balance due under said contract, and that the Court make proper disposition of said funds as the interests of said parties may appear, and that plaintiffs' interest in said real estate be declared paramount to the other defendants, and that said liens of the other defendants be declared no [sic] to attach to the real estate herein, and for such other proper relief in the premises."

RAC argues that the relief granted was outside the scope of the pleadings. However, in fact, the relief granted is virtually identical to that sought by Pierce; i.e. having the title of the real estate vested in him and having the various defendants' interests properly determined.

RAC contends that Pierce was not entitled to specific performance because he was in default and had not paid or properly tendered the balance of the purchase price. Pierce argues that since Curtice could not be located, it would be manifestly unfair to require either demand or tender.

In *Dempster* v. *Miller* (1954), 124 Ind. App. 518, 119 N.E.2d 720, it was held that:

". . . after a vendor's refusal to perform, a tender of the amount due is not necessary before purchaser's suit for

specific performance. *Walcis* v. *Kozacik* (1927), 86 Ind. App. 484, 156 N.E. 589. A tender of the purchase price is not required as a condition precedent to a suit for specific performance of a contract for the sale of real estate where the vendor evinces an intention not to perform and denies the right of the purchaser to enforce the conveyance in pursuance to such contract. *Bronnenberg* v. *Indiana Union Traction Co.* (1915), 59 Ind. App. 495, 109 N.E. 784. It has also been held that to constitute a tender it is not always necessary to produce the money and count it out. If the money is present and the party is ready and willing to pay and offers to do so, but the person to whom such offer is made by his own conduct prevents the completion of the tender, the party for whose benefit the money is offered will not be heard to say that the tender was not sufficient. *Mathis* v. *Thomas* (1885), 101 Ind. 119; *Platter* v. *Board of Com'rs. of Elkhart Co.* (1885), 103 Ind. 360, 2 N.E. 544; *Spurgeon* v. *Smitha* (1888), 114 Ind. 453, 17 N.E. 105."

In the case at bar, since the whereabouts of Curtice was unknown, since Pierce knew that there were liens against the unpaid balance of the contract, since Pierce had been named a garnishee defendant in a prior suit by RAC and had been ordered to pay RAC's judgment from the balance due under the contract, and since Pierce had made arrangements to borrow enough money to pay the balance due into court, RAC will not be heard to say that the tender was insufficient.

RAC also maintains in its brief that the relief granted was improper because publication of notice to Curtice on a complaint for specific performance does not amount to notice of quiet title proceedings. This question was not presented in the Motion to Correct Errors and was thereby waived. See TR. 59 (G) and *Suess* v. *Vogelgesang* (1972), 151 Ind. App. 631, 281 N.E. 536.

RAC next maintains that under the terms of the contract Pierce acquired no right, title or interest in the real estate until the purchase price was fully paid. The applicable provision of the contract reads as follows:

". . . the title and ownership of said real estate shall remain in the seller or his assigns and no right, title or interest in said real estate, either legal or equitable shall pass by virtue of this agreement, until said purchase price shall have been fully paid and all the terms and conditions of this agreement fully complied with."

It is well established in Indiana that the vendee under a conditional sales contract acquires equitable title to real estate. See *Knapp* v. *Ellyson Realty Co.* (1937), 211 Ind. 180, 5 N.E.2d 973; *McClellan* v. *Beatty* (1944), 115 Ind. App. 173, 53 N.E.2d 1013; and *Kimberlin* v. *Templeton* (1913), 55 Ind. App. 155, 102 N.E. 160.

RAC's fourth contention of error is based on the proposition that it had a perfected security interest *in the real estate* in question, by virtue of a financing statement filed May 4, 1966.

Although "fixtures" are within the ambit of the Uniform Commercial Code (See IC 1971, 26-1-9-313; Ind. Ann. Stat. § 19-9-313, (Burns 1964) "real estate" is not. See IC 1971, 26-1-9-104(j) ; Ind. Ann. Stat. § 19-9-104(j) (Burns 1964) ).

The record shows no security interest, perfected or otherwise. In its absence we cannot speculate as to its terms, validity, subject matter, or effect.

RAC having offered no proof of any perfected security interest, the question of priorities must revolve around RAC's judgment of September 9, 1969, which reads in part as follows:

"IT IS, THEREFORE, further ordered by the Court that said garnishee defendants [Pierce] continue to make said payments until said balance of said mortgage is satisfied and thereafter to make *the balance payments due under said contract* directly to the plaintiff Rural Acceptance Corporation in satisfaction of the above judgment this date rendered against Amos P. Curtice and Francis J. Curtice in favor of Rural Acceptance Corporation until the same is fully satisfied." (Our Emphasis.)

The judgment provided that Pierce, as garnishee defendant, was to make the balance of the payments due, first to satisfy the mortgage and then to RAC in satisfaction of its judgment. Pierce was obligated to pay only the balance due on the contract, whether or not that satisfied both the mortgage and RAC's lien.

It as long been the law that a prior equitable interest is superior to a judgment lien. *Chase* v. *Van Meter* (1894), 140 Ind. 321, 39 N.E. 455; *Shirk* v. *Thomas* (1889), 121 Ind. 147, 22 N.E. 976; *Warren* v. *Hull* (1890), 123 Ind. 126, 24 N.E. 96; *Hays* v. *Reger* (1885), 102 Ind. 524, 1 N.E. 386; *Jackson* v. *Snell* (1870), 34 Ind. 241.

In *Chase, supra,* our Indiana Supreme Court said:

"That a judgment is a lien only on the title owned by the judgment defendant, and that the lien is subject to all outstanding equities, and that a judgment defendant is not an innocent purchaser are propositions too familiar to require citation of authorities."

Pierce's equitable interest vested in 1964, when he signed the contract and took posssesion of the property. RAC's judgment lien came into being in September, 1969, when the judgment was entered. Therefore, Pierce's equitable interest is prior and superior to RAC's judgment lien.

RAC's final contention of error is that the trial court erred in failing to apportion the insurance proceeds (held in escrow after the burning of a garage on the real estate) between Curtice and Pierce ". . . as their interests appeared in the real estate thus reducing the amount due and owing the defendant Indiana Bank and Trust as mortgagee by the amount due plaintiffs and thus increasing the proceeds available to said defendants."

The court ordered that the insurance proceeds be applied to the mortgage, but did not thereby increase the amount of funds available to RAC.

Under the terms of the contract, Pierce was required to insure the premises and there was no provision for relief of the obligation to pay the purchase price, should any loss occur. Reason dictates that insurance proceeds should be credited to the party who sustains the loss. Hence, Pierce should be entitled to the benefit of the proceeds.

RAC's proposed solution would effectively deny Pierce any compensation for the loss of the garage.

The court simply placed RAC in the same position it would have occupied had no loss occurred. This determination compensated Pierce for his loss without prejudice to RAC.

Finding no error in the trial court's judgment, the same is hereby affirmed.

Robertson and Lowdermilk, JJ., concurs.

NOTE.—Reported at 298 N.E.2d 499.