**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, Plaintiff-Appellant,**

v.

**John RUSSELL, Ruth Russell, et al., Defendants-Appellees.**

**No. 1–183A23.**

Court of Appeals of Indiana, First District.

July 19, 1983.

---

Fred P. Bamberger, Robert T. Bodkin, Bamberger, Foreman, Oswald & Hahn, Evansville, for plaintiff-appellant.

Henry C. Hudson, Hawley, Hudson & Almon, Mount Vernon, for defendants-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The plaintiff-appellant, Southern Indiana Gas and Electric Company (SIGECO), appeals from a $28,500 judgment rendered against it by a Posey Circuit Court jury in a condemnation action. We reverse and remand.

## FACTS

SIGECO filed its complaint in condemnation on May 14, 1981, in the Posey Circuit Court. Therein, SIGECO sought to establish eight separate easements for the purpose of erecting transmission lines between its substations in Mt. Vernon and Hovey, Indiana.

Among the easements SIGECO sought to condemn was a strip of land approximately one-half acre in size and designated in its complaint as Easement No. 22. This land was owned by the defendants-appellees, John and Ruth Russell (Russells), and used by the couple in conjunction with a trailer park they operated.

The general nature of all eight easements taken by SIGECO was described in paragraph five of its complaint as follows:

"5. The specific rights or interests sought to be condemned and appropriated by the plaintiff in the lands owned by or in which the defendants, severally, have an interest is in each case a right of way and easement with the right to construct, inspect, patrol, maintain, operate, enlarge, alter, rebuild, relocate, repair, and remove one (1) or more electric transmission lines above ground upon one (1) line of wood, metal or other supporting structures in such numbers and at such locations along said line as plaintiff deems necessary, together with guy wires, anchors and such other equipment and appurtenances as are used or may be used

in the construction of electric transmission lines."

Record at 166.

Paragraph five then went on to describe in detail the nature of each individual easement. Referring to easement No. 22, the complaint stated:

"[A]nd that with respect to Easement for Right of Way No. 22 no such structures or anchors will be located thereon, together with the right of ingress and egress over the real estate of the defendants to and from said line or lines in the exercise of the rights and privileges hereby condemned; providing, however, that in the exercise of such right of ingress and egress the plaintiff shall wherever practical to do so use regularly established highways or farm roads or other access routes reasonably designated by defendants, which said Easements shall include the right to cut, trim and spray upon the lands of said defendants any and all trees, brush, undergrowth or overhanging branches located upon said real estate which may now or might hereafter interfere with or constitute a hazard to the construction, installation and maintenance of said electric transmission line, the right to remove other obstructions located within the area of said Easements and the right to do other acts and things necessary or convenient for the full enjoyment of the Easements hereby appropriated and in each case, subject to the rights appropriated by the plaintiff, the right shall be severally and separately reserved to each of the defendant owners to cultivate or otherwise use the land included within said rights of way and easements except that said defendants may not erect or maintain any buildings, improvements or other structures, facilities or equipment, either of a permanent or temporary nature, within the area of said rights of way and easements except fences, existing buildings, structures, facilities or equipment and roadways extending across said rights of way and easements approximately perpendicular thereto."

Record at 167–68.

On October 30, 1981, court appointed appraisers submitted their appraisal to the court. Therein they stated that the fair market value of the easement taken by SIGECO was $36,422.

SIGECO filed its exception to the appraisal on November 9, 1981. Following trial, the jury determined the easement had a fair market value of $28,500.

### ISSUES

In its brief, SIGECO has raised twenty-one issues. The sole issue with which we are concerned, and upon which we premise our reversal, can be stated as follows:

Did the trial court err in admitting expert testimony regarding the cost approach in ascertaining the fair market value of the easement?

### DISCUSSION AND DECISION

The admission of evidence regarding the cost approach and the method in which it was employed in ascertaining the fair market value of the appropriated easement was improper.

■ As a general rule, in determining the appropriate amount of damages in an eminent domain action, all of the landowner's interest is compensable, including the rights of ingress, egress, and air space. *Weldon v. State,* (1972) 258 Ind. 143, 147, 279 N.E.2d 554, 556. We have consistently held, moreover, that the fundamental purpose of our statutory eminent domain scheme [1] is to ensure land owners are given just compensation when their property is taken. *Unger v. Indiana & Michigan Electric Co.,* (1981) Ind.App., 420 N.E.2d 1250, 1257; Indiana Constitution Art. 1, § 21. However, as in the present case, the determination of the amount constituting just compensation often proves problematic.

When land is appropriated under the power of eminent domain, just compensa-

---

1. Ind.Code § 32–11–1–1 to –12 (Burns 1980).

tion has been held to be the fair market value of the acquired property at the time of the taking. *Gradison v. State,* (1973) 260 Ind. 688, 692, 300 N.E.2d 67, 72. The concept of fair market value can be defined as the amount for which the condemned land could be sold at the time of the taking assuming a willing buyer and seller, neither of whom are under any compulsion to conclude the sale. *Ohio Casualty Insurance Co. v. Ramsey,* (1982) Ind.App., 439 N.E.2d 1162, 1167, *trans. denied; City of Lafayette v. Beeler,* (1978) 178 Ind.App. 281, 287, 381 N.E.2d 1287, 1291; *State v. Jones,* (1977) 173 Ind.App. 243, 250, 363 N.E.2d 1018, 1023, *trans. denied.*

However, because of the inherent unique qualities of every condemned parcel of land, we have recognized that the utilization of various appraisal techniques is often necessary to an accurate determination of fair market value. Thus, we have refused to adopt a single method of appraisal to the exclusion of others. *Jones,* at 251 and 363 N.E.2d 1024. Rather, we recognize three separate methods of appraisal.

In many cases the fair market value can be determined by means of the comparable sales approach. *See* 4 Nichols on Eminent Domain § 12.311(3) (3rd ed. 1981). This approach seeks to ascertain the fair market value of the land in question by comparing the selling prices of similar properties. While this approach was considered by the Russells' expert witnesses in the present case, they both properly concluded it was inappropriate because there were too few relevant comparable sales upon which to determine the fair market value. *Jones,* at 252 and 363 N.E.2d 1024.

The second recognized method of appraising fair market value is the income or capitalization approach. *See* 4 Nichols, *supra* § 12.312. Essentially, under this method, fair market value is determined by making a capitalization of the net income produced by the property where the income is derived from the intrinsic nature of the land itself and not from a business conducted thereon. Use of the income approach, however, is generally limited to cases such as the present one where evidence of comparable sales is lacking. *Jones,* at 252 and 363 N.E.2d 1024–25; *Mark v. City of Indianapolis,* (1966) 247 Ind. 511, 515, 219 N.E.2d 434, 436.

Finally, when neither the comparable sales approach nor the income approach are applicable, many states recognize the cost approach as a viable method of determining fair market value. *See* 4 Nichols, *supra* § 12.2. Under the cost approach fair market value is determined by computing the difference between the original cost or cost of reproducing the condemned property and the applicable amount of depreciation. *Id.,* at § 12.313. However, use of the cost approach is proper only when the condemned "property or structure is unique, the use to which it is put is based upon this uniqueness, and it is reasonable to believe that the owner will replace the building with one similar in character." *Id.* (Footnote omitted.)

While our supreme court has rejected the cost approach on two different occasions, *State v. Church of the Nazarene of Logansport,* (1978) 268 Ind. 523, 528, 377 N.E.2d 607, 610; *State v. Lincoln Memory Gardens, Inc.,* (1961) 242 Ind. 206, 214, 177 N.E.2d 655, 659, a close reading of those cases reveals that the method had been improperly applied. In both instances the calculation of fair market value had not been made by comparing the difference between the reproduction cost and depreciation, but rather, was asserted to be simply the cost of obtaining a substitute property. As the court stated in *Church of the Nazarene,* "[t]his in effect is an attempt to apply a substitution measure of damages." *Id.* 268 Ind., at 528 and 377 N.E.2d, at 610.

■ Thus while it is not essential to our holding herein, we believe the cost approach—when properly applied—can serve as a valid method of ascertaining fair market value.

■ Notwithstanding our foregoing analysis, we find that as in *Church of the Nazarene* and *Lincoln Memory Gardens,* the cost approach was improperly applied in the

present case. The record reveals that the Russells' expert witness, Victor Funke, utilized the cost approach to determine the fair market value of the easement by properly computing the difference between the reproduction cost and depreciation of the property. However, despite the seemingly correct application of the cost approach, Funke's methodology was incorrect in two respects.

First, the record is totally void of any evidence indicating the condemned property interest was unique, the use to which it was put was based upon its unique qualities, or that the Russells intended to replace their lost rights in the property with similar rights elsewhere. 4 Nichols, *supra* § 12.313. Hence, there was no showing that the use of the cost approach was necessary, or that the income approach was inapplicable.

Secondly, the use of the cost approach was improper in the present case because of the very nature of the property interest appropriated by SIGECO. Unlike cases wherein the fee is taken along with any improvements, the taking herein was of an easement only. Thus, none of the improvements on the Russells' property were displaced in any way. They remain free to continue the operation of their trailer park just as before the condemnation. And while the Russells are entitled to just compensation for the rights which were appropriated, the cost approach is an improper method of ascertaining the fair market value of those rights.

The judgment is reversed and the cause is remanded for a new trial.

ROBERTSON, P.J. and NEAL, J., concur.