Timothy E. COOK, Appellant
(Defendant),

v.

CITY OF INDIANAPOLIS, through the DEPARTMENT OF PUBLIC SAFETY, et al., Appellee (Plaintiff),

and

Blakley Corporation, Appellee
(Intervenor–Defendant).

No. 49A02–8909–CV488.

Court of Appeals of Indiana,
Second District.

Sept. 18, 1990.

William Catlin Whitehead, Anderson, Craig D. Doyle, Klineman, Rose, Wolf and Wallack, Indianapolis, for appellant.

Douglas J. Webber, Deputy Corp. Counsel, City–County Legal Div., Indianapolis, for appellee City of Indianapolis.

Michael L. Einterz, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for appellee Blakley Corp.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant Timothy Cook (Cook) appeals from the condemnation of his property by the plaintiff-appellee City of Indianapolis (City), claiming that the trial court erred when it determined the amount of damages he was due and that it erred when it awarded intervenor-defendant-appellee Blakley Corporation (Blakley) a portion of the condemnation proceeds.

We affirm in part and reverse in part.

## FACTS

The facts most favorable to the trial court's judgment reveal that on June 3, 1987, the City filed a "Complaint For Appropriation of Real Estate" seeking property owned by Cook. The trial court appointed three appraisers, each of whom valued the property at $25,000. A bench trial was held on January 3, 1989, with the amount of damages as the sole issue to be decided. Cook introduced evidence that the County Auditor had assessed the value of the property at $34,230 for property tax purposes, and claimed that the "true cash value" of the property was $102,690.

The trial court determined that the fair market value of the property was $30,800. Blakley had intervened and claimed a portion of the proceeds under a prior judgment lien on the property. In 1971 the property had been owned by the Clyde Realty Company (Clyde). At that time, Clyde contracted with Richard Cosby (Cosby) to sell the property to Cosby for $30,000 under a land sale contract. Cosby took possession of the property, paid a $5,000 down payment and made monthly installment payments to Clyde.

Cosby made his final payment to Clyde in July 1977 and Clyde deeded the property to Cosby on July 29, 1977. On June 9, 1977, Blakley had obtained a judgment against Clyde in a municipal court in the amount of $4,063.75 and recorded that judgment in the clerk's judgment docket.

Two years later, on November 28, 1979, Cosby conveyed the property to Joseph Price, who, on the same day, deeded the property to St. Jude Deliverance Center (St. Jude). St. Jude conveyed the property to Cook on September 6, 1986.

On May 7, 1987, Blakley filed a complaint to renew its judgment against Clyde and named Cook as garnishee-defendant. A default judgment against Clyde (then a defunct entity) in the amount of $8,803.43 was issued on June 8, 1987. On December 23, 1988, Blakley moved to intervene in the condemnation proceedings the City had initiated against Cook. After initially denying Blakley's motion, the trial court allowed Blakley to intervene and awarded it $10,783.68 of the condemnation proceeds.

## ISSUES

1. Whether the trial court erred when it determined the fair market value of the property?

2. Whether the trial court erred when it awarded Blakley a portion of the proceeds?

## DECISION

ISSUE ONE—Did the trial court err when it awarded Cook $30,800 in damages?

PARTIES' CONTENTIONS—Cook argues that because the tax assessment value of the property was $34,230, the "true cash value" of the property was $102,690, and that the tax assessment value of the property was an admission against interest by the City which it could not attempt to disprove. The City replies that the measure of damages in a condemnation proceeding is the fair market value of the property, and that because the tax assessment value of the property is not the fair market value of the property, the trial court did not err when it determined the damages it owed Cook.

CONCLUSION—The trial court's award of damages was proper.

█ It is well-established that when land is appropriated under the power of eminent domain, the fair market value of the acquired property at the time of the taking is just compensation. *Gradison v. State* (1973), 260 Ind. 688, 300 N.E.2d 67; *Southern Indiana Gas & Elec. Co. v. Russell* (1983), Ind.App., 451 N.E.2d 673.

Cook claims that because the assessed value for property tax purposes of his property was $34,230, the "true tax value" of the property is $102,690. In support of this proposition, Cook cites Ind.Code 6–1.1–1–3 (1988) which provides that: " 'Assessed value' or 'assessed valuation' means an amount equal to thirty-three and one-third percent (33⅓%) of the true tax value of the property." [1]

Cook is correct in his assertion that the true tax value of the property is $102,690. That fact, however, has little relevance to the determination of damages awarded in a condemnation proceeding. IC 6–1.1–31–6(c)(1988) provides that: "With respect to the assessment of real property, true tax value *does not mean fair market value....*" [2] (Emphasis supplied).

█ As the true tax value of the property is not the fair market value of the property and Cook has not shown its relevance, he has failed to demonstrate how the trial court erred when it determined the damages owed to Cook by the City. Similarly, Cook's claims that the trial court erred, by refusing to admit certain documents into evidence, are without merit, as the documents concerning the taxes paid were irrelevant to the determination of the fair market value of the property.

ISSUE TWO—Did the trial court err when it awarded Blakley a portion of the condemnation proceeds?

PARTIES' CONTENTIONS—Cook asserts that because Cosby had acquired equitable title to the property when he purchased the property under the land sale contract with Clyde, Cosby's equitable interest was superior to Blakley's subsequently acquired judgment lien, and therefore, once Cosby paid the contract price, Blakley's judgment lien on the property was no longer valid. Blakley replies that a judgment lien is valid even against subsequent bona fide purchasers, and therefore it was valid against Cook.

CONCLUSION—The trial court erred when it awarded Blakley a portion of the condemnation proceeds.

█ Under a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee, but equitable title vests in the vendee at the time the contract is consummated. *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641; *Willsey v. Peoples Fed. Sav. & Loan* (1988), Ind.App., 529 N.E.2d 1199, *trans. denied.* The supreme court, in *Skendzel*, decided that a land contract, once consummated, constituted a present sale and purchase of the property, with the vendor retaining the legal title of the property as security for the performance of the contract. The supreme court observed: "Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance." *Skendzel, supra* 261 Ind. at 234, 301 N.E.2d at 646.

█ Ind.Code 34–1–45–2 (1988) provides that any money judgment recovered in a court shall be a lien upon any real estate owned by the judgment debtor, located in the county where the judgment was obtained. Our supreme court determined long ago, however, that a prior equitable interest is superior to such a judgment lien. *Chase v. Van Meter* (1894), 140 Ind. 321, 39 N.E. 455; *Whipperman v. Dunn* (1890), 124 Ind. 349, 24 N.E. 166. *See also Hunt-*

---

**1.** This provision was amended by P.L. 24–1986, which substituted the phrase "true tax value" for the phrase "true cash value."

**2.** This provision was also amended by P.L. 24–1986 which changed the phrase "true cash value" to "true tax value."

*ingburg Prod. Credit v. Griese* (1983), Ind. App., 456 N.E.2d 448; *Rural Acceptance Corp. v. Pierce* (1973), 157 Ind.App. 90, 298 N.E.2d 499.

This court, in *Rural*, considered similar factual circumstances and determined that once the vendee had paid the full contract price, the vendee acquired the property free of any judgment liens issued against the vendor. Cosby's equitable interest in the property vested in 1971, when he took possession of the property and began making payments to Clyde under the land sales contract. Blakley's judgment lien did not come into being until 1977, and therefore Cosby's prior equitable interest was superior to Blakley's judgment lien.

In *Rural*, the judgment creditor sought to prevent a vendee from receiving title to property purchased under a conditional land sale contract. The judgment creditor asserted a judgment lien which would not be satisfied by the balance due under the land sales contract. The vendee brought suit seeking specific performance of the contract, and the trial court ordered the vendee to pay the balance of the contract to the judgment creditor. The creditor appealed claiming the payments would not be sufficient to satisfy the judgment lien. This court decided the vendee "was obligated to pay only the balance due on the contract, whether or not that satisfied both the mortgage and RAC's lien." *Rural, supra* at 97, 298 N.E.2d at 502.

The court in *Rural* allowed the judgment creditor to reach the unpaid balance of the contract when the creditor stepped into the vendor's shoes. The court, however, concluded the vendee's equitable interest was superior to the judgment lien. Therefore, the judgment creditor could not reach the property other than by asserting the vendor's remaining rights.

The evidence adduced at trial indicates that Cosby owed $5,190.53 at the time Blakley obtained its judgment against Clyde. As this court's decision in *Rural* demonstrates, had Blakley sought to recover the payments under the land sale contract directly from Cosby, it could have satisfied its $4,563.75 judgment lien. Blak-

ley, however, did not assert its right, and Cosby was obligated to pay only the balance due on the contract. Blakley could not assert Clyde's rights, because Cosby had paid the balance and extinguished the vendor's rights. Therefore, having paid the balance due on the contract, Cosby obtained the property free from Blakley's judgment lien. *See Rural, supra.*

■ Blakley claims that it was unaware of the land sale contract between Clyde and Cosby and therefore it could not have asserted its rights. However, possession of land is notice to the world of the possessor's claim of ownership and right to possession. *Olds v. Hitzemann* (1942), 220 Ind. 300, 42 N.E.2d 35; *Bastin v. Myers* (1924), 82 Ind.App. 325, 144 N.E. 425. Cosby had possessed the property for six years at the time Blakley obtained its judgment. In this connection, the court in *Hentges v. P.H. Feely & Son, Inc.* (1989), Minn.App., 436 N.W.2d 488, decided that possession by a vendee under a land sale contract operates as full notice of rights to the creditors of the vendor.

Because Cosby paid the full price under the land sale contract, we conclude that he obtained title to the property free from Blakley's judgment lien. *Rural, supra; see also* 77 Am.Jur.2d Vendor and Purchaser 516 (1975); Annot., *Right of Vendee under Unrecorded Executory Land Contract as Against Subsequent Deed or Mortgage Executed by, or Judgment Rendered Against Vendor.* 87 A.L.R. 1505 (1933). Therefore Blakley had no interest in the property, so the trial court erred when it awarded Blakley a portion of the condemnation proceeds.

The trial court's judgment as to the amount of the damages awarded is affirmed, and the trial court's judgment awarding Blakley a portion of the condemnation proceeds is reversed and remanded for further proceedings consistent herewith.

CHEZEM, J., concurs.

SULLIVAN, J., concurs in part and dissents in part.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree with the majority's resolution of Issue I.

However, I respectfully dissent from that portion of the majority opinion which holds that Cosby obtained title to the real estate in question free and clear from Blakley's judgment lien.

Blakley's judgment against Clyde was recorded on June 10, 1987. Record at 322. At that time there was a balance due on the contract between Cosby and Clyde in the amount of $5,896.67. I read *Rural Acceptance Corporation v. Pierce* (1973) 1st Dist., 157 Ind.App. 90, 298 N.E.2d 499, to hold that liens against real estate are valid against a contract purchaser to the extent of the unpaid contract balance at the time the lien attaches.

In this regard, I believe the majority reads the *Rural Acceptance* decision wrongly. In that case the vendee was making the installment contract payments directly to a prior lienholder, a mortgagee. At the time of trial, the vendee owed a balance of $5,201.34. The balance due upon the mortgage was $2,721.23. The trial court awarded this sum to the mortgagee. A judgment creditor prior in time to the lien of Rural Acceptance was awarded the full balance due upon the judgment, $1,000. Although, Rural's judgment lien balance was $3,212.44 plus interest and attorney fees it could recover only the $1,480.11 representing the remaining liability of the vendee upon the real estate contract.

In the instant case, we are unaware of any other holders of liens prior in time to that of Blakley Corporation. For this reason, the basis for distribution of the contract balance among the various lienholders in *Rural* is not here applicable. The underlying rationale of the *Rural* decision is however applicable.

I would affirm the judgment as to the amount of damages awarded but would remand with instructions for the trial court to fix and determine the portion of the damage award payable to Blakley not to exceed $5,896.67.