Francis W. SPLITTORFF,
Appellant–Defendant,

v.

Eloise W. FEHN, Appellee–Plaintiff.

No. 87A01–0309–CV–361.

Court of Appeals of Indiana.

June 16, 2004.

Rehearing Denied Sept. 2, 2004.

Robert R. Faulkner, Evansville, IN, Attorney for Appellant.

Christopher C. Wischer, Douglas A. Welp, Bamberger Foreman Oswald and Hahn, LLP, Evansville, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Francis Splittorff appeals a grant of summary judgment in favor of Eloise W. Fehn in a lawsuit between the two involving the sale of certain real property located in Warrick County, Indiana. Splittorff challenges the correctness of that ruling as the sole issue upon appeal.

We affirm.

The facts favorable to Splittorff, the nonmoving party, are that on May 22, 1987, Fehn entered into a Real Estate Agreement (the Agreement) whereby Fehn agreed to pay Splittorff and his wife at the time, Regina Ann Prada Splittorff, $45,000 to purchase real property owned by the Splittorffs. The Agreement established the following terms: (1) Fehn would pay the Splittorffs $500 down at the time the Agreement was executed (2) and an additional $8500 at closing. (3) Fehn would pay the balance in 180 installment payments of $200 each, plus monthly interest payments on the unpaid balance. A short form of the Agreement was recorded in the Vanderburgh County Recorder's Office on July 24, 1987. Fehn timely submitted payments per the Agreement through and including the June 1, 2000, payment.

Meanwhile, and unknown to Fehn at the time, three separate judgment liens were entered against Francis Splittorff. The first was entered on July 24, 1995, in favor of Citizens National Bank for $22,400. The second was entered on April 4, 1997, in favor of Evansville Teacher's Credit Union for $14,085.70. The third was a federal tax lien entered on December 15, 1997, for $33,997.82. Henceforth, we will refer to Citizen's National Bank, Evansville Teacher's Credit Union, and the United States of America collectively as "the Lien Holders". Sometime shortly after she made the June 1, 2000 installment payment, Fehn learned of the three judgment liens against Splittorff. She made no more payments to the Splittorffs. After making the June 1 payment, Fehn owed a balance of $5000, plus interest.

On June 5, 2001, Fehn filed a Complaint for Completion of Real Estate Agreement. The named defendants included the Splittorffs and the Lien Holders. The Splittorffs' answer asserted that Fehn had breached the Agreement by failing to submit payments after June 1, 2000. Therefore, the answer alleged, Fehn was estopped from asserting her complaint. The answer also asserted the affirmative defense of laches. On November 12, 2001, Fehn filed her First Amended Complaint for Completion of Real Estate Agreement. In the amended complaint, Fehn noted the Agreement contained a provision permitting her at any time to prepay any part or all of the balance of the purchase price, plus interest to the date of payment. Citing that provision, Fehn stated:

The plaintiff is ready, willing, and able to pay to the Clerk of this Court an amount equal to the unpaid balance of the purchase price and interest accruing from June 1, 2000 upon the execution and delivery by the defendants, Francis W. Splittorff and Regina Ann Prada Splittorff, to the plaintiff of a Warranty Deed conveying the real estate to this plaintiff in accordance with the terms and provision of said Real Estate Agreement, and which funds shall be held by the Clerk for the benefit of the defendants, as their interests may appear.

*Appellant's Appendix* at 19. On October 2, 2002, Fehn filed a motion for summary judgment requesting the following relief: (1) A ruling adjudging Fehn's title and interest in the subject property to be superior to that of the Lien Holders, and (2) a ruling that, after paying the balance due under the terms of the Agreement, Fehn

was entitled to receive a warranty deed from the Splittorffs, free and clear of any claims of the Lien Holders. On August 12, 2003, the trial court granted Fehn's motion and entered judgment in favor of Fehn. On August 14, 2003, Fehn tendered payment to the court of the balance due plus interest, per the terms of the Agreement. Francis Splittorff alone (and not the Lien Holders or Regina Ann Prada Splittorff) appeals the ruling in Fehn's favor.

Our supreme court has set forth the standard when reviewing a ruling on summary judgment as follows:

> On appeal, the standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. Review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H). We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court.

*Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003) (some citations omitted). The party seeking summary judgment bears the burden of making a prima facie showing, by specifically designated evidence, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Baker v. Heye–America*, 799 N.E.2d 1135 (Ind.Ct.App.2003), *trans. denied.* When these two requirements are met, the burden shifts to the nonmoving party to specifically designate facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts relating to a dispos-

itive issue are in dispute or where the undisputed material facts support conflicting inferences on that issue. *Id.* "Genuine", for summary judgment purposes, means that the issue of fact in question must be established by sufficient evidence in support of the claimed factual dispute so as to require a jury or judge to resolve the parties' differing versions of the truth. *Id.* Finally, the party appealing from a summary judgment decision bears the burden of persuading this court that the ruling was erroneous. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905 (Ind. 2001).

■ Splittorff contends that the trial court's ruling in Fehn's favor is erroneous because Fehn relinquished any right to enforce the Agreement when she ceased making payments thereon. Splittorff puts it somewhat more forcefully, stating, "Fehn should not be allowed to enforce a contract she breached, repudiated and abandoned." *Appellant's Brief* at 4. Fehn counters that her actions were taken in reliance upon, and consistent with, this court's holding in *Rural Acceptance Corp. v. Pierce*, 157 Ind.App. 90, 298 N.E.2d 499 (1973). Because it is important to our analysis, we will review that case in detail.

Pierce purchased property from Curtice pursuant to a conditional sales contract. The property was subject to a mortgage held by a bank, so Pierce made his contract payments to the bank, where they were applied to Curtice's mortgage. More than three years later, Warthen obtained a judgment against Curtice. Slightly more than two years after that, RAC obtained a default judgment against Curtice. In September 1969, those two judgment holders filed an attachment and garnishment proceeding against Curtice, and Pierce was joined as a garnishee defendant. As a result of that proceeding, the court ordered Pierce to continue making payments

to the bank until the mortgage was satisfied, and then to make payments directly to RAC in satisfaction of its judgment. In November 1969, on the advice of the bank, Pierce ceased making payments and, one month later, filed an action to "get these matters cleared up." *Id.* at 500.

At trial in the matter, the evidence showed that Pierce owed $5201.34 on the original contract with Curtice. It also showed that Pierce had arranged with the bank to borrow that amount upon receipt of title, and that Pierce stood ready and willing to pay it to the court in satisfaction of the contract obligation. RAC argued that Pierce's failure to make payments after November 1969 had put him in default of the contract. The court ruled in favor of Pierce. We held that the failure to make payments after the liens were entered, when considered in conjunction with the lawsuit initiated by Pierce to quiet title to the real estate, did not constitute default of the original sales contract.

Although there are differences between the salient facts in *Rural Acceptance Corp.* and those in the instant case, there are also important similarities. Splittorff does not dispute that the contract here, like the one in *Rural Acceptance Corp.*, is a conditional sales contract. Also, he does not dispute that "the vendee under a conditional sales contract acquires equitable title to real estate." *Id.* at 502. Finally, Splittorff does not challenge the trial court's ruling that Fehn's interest was superior to the judgment liens held by the Lien Holders. We note also that there are no underlying material facts in dispute.

■■■ The only dispute remaining, and the subject of Splittorff's contention that summary judgment is inappropriate here, is the question of whether Fehn abandoned the contract. Splittorff offers a two-fold argument in support of this contention. First, he sets forth the boilerplate law pertaining to a buyer's breach of a conditional real estate contract. According to Splittorff, when the buyer under a real estate contract "failed to pay the obligation after demanding notice the vendor is justified in pursuing remedies under the contract. Paragraph 7 of the subject contract specifically lists failure to make monthly installments as an act of default and provides for the remedy of foreclosure." *Brief of Appellant* at 5. Although those propositions are true, it is undisputed that Splittorff failed to trigger his right to recover under Paragraph 7 when he neglected to send Fehn the required notice of nonpayment.[1] Thus, any argument about Splittorff's remedies in the event of a breach by Fehn is irrelevant.

■■■ By holding that Splittorff did not take the step necessary to trigger his right

1. We note as an aside that in his counterclaim, Splittorff claimed that he was "entitled to foreclose any interest [Fehn] may have had in the property." *Appellant's Appendix* at 11. That is not true. The Agreement contained an acceleration clause providing that if Fehn breached the contract, then Splittorff had the right to declare the balance remaining under the Agreement due immediately. If Fehn did not then pay the balance in its entirely, Splittorff could "foreclose the equitable lien of [Splittorff] in and upon the . . . property and recover from [Fehn] the unpaid balance of the purchase price. . . ." *Appellant's Appendix* at 26. The foregoing entitled Splittorff to recover only the *unpaid balance* of the purchase amount, plus interest. The contract did not contain a forfeiture clause calling for Fehn to forfeit her entire interest in the property in the event of a breach any time before paying it off entirely. *See, e.g., Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641, 643 (1973) ("if any default shall be made in the payment of said purchase price . . . all moneys and payments previously paid shall, at the option of the Vendor without notice or demand, be and become forfeited and be taken and retained by the Vendor as liquidated damages"), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974).

to seek remedies for breach, we do not mean to beg the question whether Fehn breached in the first place. To fully evaluate that question, we must examine the situation confronting Fehn upon discovering the three judgment liens. At the time Fehn made the June 1, 2000 payment, she was unaware of the liens. Presumably, sometime before July 1, she learned of the liens. Had Fehn sent the July 1 payment to Splittorff, as Splittorff's arguments on appeal suggest she should have, what then? *Rural Acceptance Corp.* teaches that Fehn's equitable interest in the real estate is superior to that of the Lien Holders only to the extent that Fehn's interest is *prior* to the entry of the judgment liens. *Rural Acceptance Corp.* also teaches that the judgment liens entered after Fehn acquired equitable title to the real estate conferred upon the Lien Holders only such rights in the real estate as Splittorff then possessed. This means that the Lien Holders acquired Splittorff's right to receive installment payments from Fehn. Both parties proceed on the assumption, and the trial court so held, that the Lien Holders' right in this regard was not chargeable to Fehn unless and until Fehn became aware of the existence of the liens. Although that is not the *only* interpretation of *Rural Acceptance Corp.*, it is a reasonable one. Combined with other authority, it is perhaps the best one. *Cf., e.g., Radiotelephone Co. of Indiana, Inc. v. Ford,* 531 N.E.2d 238, 240 (Ind.Ct.App. 1988) ("[t]he rule today is the same as it has been for over one hundred years; a creditor acquires an equitable lien on funds owed by a third party to the judgment debtor *from the time the third party receives service of process in proceedings supplemental* ") (emphasis supplied). This means that, at a minimum, if Fehn had made payments to Splittorff after she discovered the existence of the liens, she would have been liable to the Lien Holders for that same amount if Splittorff did not subsequently satisfy his debts to the Lien Holders. Thus, Fehn risked losing any money she paid Splittorff after June 1, 2000.

If the law were as Splittorff urges, then Fehn would have been forced to choose between, on one hand, breaching the contract and, on the other, making what amounted to double payments (one to Splittorff and one to the Lien Holders) for the balance of the contract. It is that harsh scenario that the holding in *Rural Acceptance Corp.* prevented. Viewed thus, *Rural Acceptance Corp.* established a procedure for parties such as Fehn to follow upon discovery of a judgment lien entered against property they are purchasing under an installment contract. Such party should: (1) cease making payments to the seller/judgment debtor; (2) initiate a separate action to resolve questions related to the right to the unpaid balance of the purchase amount; and (3) arrange to pay the balance due under the contract to the court and so notify the court. Having followed the procedure approved in *Rural Acceptance Corp.*, Fehn did not abandon the contract, but instead did all that was necessary to preserve her rights under the contract. Therefore, the trial court did not err in granting summary judgment in Fehn's favor.

Judgment affirmed.

KIRSCH, C.J., and BARNES, J., concur.